114 So.2d 305 (1959)
Lawrence GIGLIO and Peter Giglio, Appellants,
v.
Frank VALDEZ, Appellee.
No. 760.
District Court of Appeal of Florida. Second District.
August 28, 1959.
Fowler, White, Gillen, Yancey & Humkey, Tampa, for appellants.
Harry M. Hobbs, Tampa, for appellee.
THORNAL, Associate Judge.
Appellants Giglio, who were defendants below, seek reversal of a judgment in favor of appellee Valdez based on a jury verdict in an automobile negligence case.
Our conclusion turns on whether certain remarks of the trial judge addressed to counsel for appellants constituted reversible error.
Valdez and wife sued the Giglios for injuries allegedly resulting from the negligent operation of an automobile by Lawrence Giglio. The machine was owned by Peter Giglio. There was a jury verdict for both Valdez and his wife. The defendants Giglio do not seek reversal of the judgment for the wife. However, they do appeal from the judgment in favor of the husband.
Appellants contend that the evidence shows Mr. Valdez to have been guilty of contributory negligence and that certain remarks of the trial judge directed to their attorneys in the presence of the jury resulted in irreparable injury to their prejudice.
Appellee contends that the jury verdict was adequately supported by the evidence and that even though perhaps ill-advised, the remarks of the trial judge were harmless error that would not justify a reversal.
We think it unnecessary to undertake the responsibility of evaluating the evidence. Although on the subject of contributory negligence the case is rather close, we do not feel justified in disturbing the jury verdict because in the ultimate there was adequate evidence upon which the jury could properly find for the plaintiff Frank Valdez. The fact that the evidence was in conflict and that it was readily subject to varied inferences, gives emphasis to the importance of the contention regarding the alleged prejudicial remarks of the trial judge. In situations of this nature the remarks of the judge can be much more harmful and prejudicial when the rights of the parties rest upon jury evaluation of neatly balanced testimony and potentially conflicting inferences that might easily be drawn from the same set of facts. We must now examine the colloquy between judge and counsel.
During the cross-examination of appellant Lawrence Giglio by appellee's counsel, the following occurred:

*306 "Q. On April 2, how long had you been driving an automobile?
"Mr. Kinney: Object to this as immaterial. No allegations in the complaint charging this.
"The Court: No, but I think I want to know how old he was when he started. We have too much of that stuff. How old were you?"
The following remarks were made when Mr. Kinney, appellants' counsel, interposed an objection during the closing argument by counsel in behalf of appellee:
"Mr. Kinney: I hate to do this but I've got to.
"The Court: Listen, he didn't interrupt you and I want you to quit interrupting him.
"Mr. Kinney: I've got to interrupt in fairness to my client.
"The Court: All right, put it in the record what's wrong.
"Mr. Kinney: I object to counsel arguing that this man has lost $15 a week for the next sixteen years, because there is no evidence in the record that he will.
"The Court: The Jury knows that. Argue to them. Don't argue to me.
"Mr. Kinney: I want the record to show my objection, if the court please. I am not arguing with anyone.
"The Court: Put it in there, and put right after it, `overruled.' And hereafter, Mr. Kinney  you never have tried a case before me before 
"Mr. Kinney: Yes sir.
"The Court: Well, I don't allow lawyers to be interrupted by another lawyer. Now, in your time you can correct him, but you can't interrupt him.
"Mr. Kinney: Sometimes it's too late.
"The Court: I know it. That's a sharp trick, that's exactly what it is. You see a lawyer getting along pretty good on his argument and you interrupt him and disrupt his line of thought. I don't like it.
"Mr. Kinney: May the record also show that I object to the comments of the trial judge as being unfair to counsel for defendant and prejudicial to my client.
"The Court: Take this, lady. Whenever I see a lawyer interrupt another lawyer for the purpose of disrupting another lawyer's line of thought, I think it's unfair and I say so, and that's exactly what happened here. As a general rule I don't let lawyers interrupt other lawyers, and I ain't a going to start it. I'm too old to start doing that sort of thing. Now, anything else you want to put in there?
"Mr. Kinney: No sir. Thank you very much."
We have carefully examined this record. We find nothing whatsoever that suggests that the attorney for appellants had been obnoxious, or impertinent or in any fashion disrespectful to the trial judge, who, much to the regret of the Bench and Bar of the state, has passed away since the trial of the instant case. We deem it appropriate to interpolate that he enjoyed a reputation for kindliness and considerateness of others that was completely inconsistent with the handling of the instant case. We can perhaps justifiedly suspect that for some personal reason not reflected by the record he failed in the instant case to maintain his customary judicial equilibrium. We cannot permit this regrettable factor to steer our judgment away from a full recognition of appellant's rights as shown by the record.
We think it unnecessary to point out that the trial of a lawsuit imposes mutual obligations of respect and understanding on *307 the lawyers and the trial judge. The jury has a right to look to the judge for guidance, for the maintenance of the dignity and decorum essential to the proper administration of justice, and, in short, as the personification of fairness and equality before the law. Unless the judge keeps the contest in its proper bounds the jury is apt to regard the matter as a sort of chess game in which the lawyers bring out all of their horses, and castles, bishops and pawns in a studied effort to checkmate each other. When the trial gets out of bounds, or when the judge demonstrates his ill-feeling and animosity toward one of the lawyers, it is not the lawyer who suffers. Rather it is his client who is being deprived of the high level of justice that is the handiwork of a fair, temperate and impartial mediator in the judge's chair. 53 Am.Jur. Trial, Sec. 75, p. 75.
When the thinking of a jury is prejudiced against a lawyer the probability is that the lawyer's client suffers accordingly. It appears to us that when the trial judge in effect accuses a lawyer of being a sharp trickster or as engaging in unfair and improper conduct in the manner in which he handles the case, he is reaching out toward the ultimate in embarrassing the lawyer before the jury and in prejudicing the client's cause accordingly. Cone v. Cone, Fla. 1953, 68 So.2d 886. This is especially so when, as here, there was no justification whatever for the castigation and the sharply conflicting evidence could be swayed in one direction or another by the evident attitude of the trial judge. Remarks of the judge during the course of a jury trial can have much more influence on the result than the actual evidence presented. See Gendzier v. Bielecki, Fla. 1957, 97 So.2d 604.
Taking all of these elements into consideration we have the view that the intemperate remarks of the judge in the instant case cannot be written off as harmless. On the other hand, it appears to us that they might well have persuaded the jury unduly in favor of the appellee. Under the circumstances shown by the record we conclude that the ends of justice require a new trial because of the error committed. Ward v. Hopkins, Fla. 1955, 81 So.2d 493.
The judgment is reversed.
ALLEN, C.J., and KANNER, J., concur.