133 So.2d 477 (1961)
Vinson SKELTON and Alterman Transport Lines, Inc., a Florida, corporation, Appellants,
v.
Jesse Ray BEALL, Appellee.
No. 60-654.
District Court of Appeal of Florida. Third District.
October 5, 1961.
Ross, Reinhardt & Preddy, Miami, for appellants.
Nichols, Gaither, Beckham, Colson & Spence, and Sam Daniels, Miami, for appellee.
Before PEARSON, TILLMAN, C.J., and HORTON and CARROLL, JJ.
CARROLL, Judge.
This is an action for personal injuries received by the plaintiff in a collision between his automobile and a truck driven by the appellant Skelton for the appellant Alterman Transport Lines, Inc. The accident took place in Alabama at the intersection of U.S. highway 82 and state highway 14. The truck was proceeding north on U.S. 82, and plaintiff was driving west on state highway 14, the entrance of which onto U.S. 82 was controlled by a stop sign. The collision occurred when the plaintiff in crossing U.S. 82 was struck by the truck approaching from his left. The record shows the question of liability was close. A jury decided the issues relating to negligence and contributory negligence in favor of the plaintiff, and awarded a verdict of *478 $40,000. Defendants' motion for new trial was denied and they appealed.
One of the questions duly presented on appeal is appellants' contention that they were deprived of a fair trial by reason of conduct and statements of the court directed to their attorney during his final argument to the jury. It appears there was one witness to the accident in addition to the two drivers. He left the scene without giving his address and before investigating officers arrived. Plaintiff later found him. Defendants learned that he had been located. Neither party took his deposition. Plaintiff brought him from Alabama for the trial. He was observed by defendants' counsel at court. He remained until plaintiff's case was closed on a Friday afternoon after which he departed, and was unavailable for testimony when defendants proceeded with their case. During argument to the jury at the close of the trial defendants' attorney attempted to comment on the failure of the plaintiff to bring before the jury the testimony of this one disinterested witness to the accident. The court sustained an objection to such comment because it appeared the evidence was equally available to and not presented by defendants.[1] The episode in question, during the argument before the jury by Mr. Preddy for the defendants, is disclosed by the following excerpt from the record.
"The real issue in this case, and the one that Mr. Beckham wants you to overlook, is the liability, and the negligence aspects of it.
"Now, before I forget it, I would like to say one thing, that I was stunned this afternoon, and really taken aback, and surprised and at a loss to know what to do because they really pulled one on me good today. There are only two eye-witnesses, two interested parties, Mr. Skelton and Mr. Beall (indicating), that told you anything about how this accident happened at the time it happened. There is one eye-witness, one eye-witness, and the evidence shows you that Mr. Skelton talked to that eye-witness, and got his version of the accident, and told him to stay there, a colored man, Collins Underwood  `Stay here, Collins, until the police get here.' He didn't even know his name, but I'm using the name `Collins.' `Stay here until they get here, so you can tell them how the accident happened.'
"Mr. Skelton goes, called the police  he's gone five minutes  leaving this colored man there, where Mr. Beall was, and he gets back and he's gone. Mr. Skelton tried to find him, told the police officers about him, couldn't find him. They find him. They find him.
"Well, we went up to Alabama and we took some depositions. They didn't  they didn't  they noticed these depositions, by the way.
"Mr. Beckham: Just a minute, Mr. Preddy. By the way, I'm going to have to object to this type of an argument. I'm sorry, but I think this is completely improper. We have an affidavit of this man, which is a part of the court record; and if you are going to try to draw any inferences about his testimony, I'll stipulate with you right now to put the affidavit into evidence 
"Mr. Preddy: Affidavit prepared by an attorney that I can't cross-examine.
"Mr. Beckham: That is correct.
"Mr. Preddy: Yes, that's correct.
"Mr. Beckham: But you never took any affidavit, Mr. 
"Mr. Preddy: What if you put him on the stand?
"Mr. Beckham: We gave you his name three months ago, six months *479 ago, which is in the record. You never made any attempt to contact him to take his deposition. He was here, and you saw him, and you didn't put him under subpoena.
"Now, it's completely wrong for you to get up here and to argue this after we kept this man here a solid week, to testify, and then finally let him go back. That's completely wrong.
"Mr. Preddy: Mrs. Paxton, and gentlemen 
"Mr. Beckham: And I object to it; and if you will just wait until the Judge gets here, I would like to make an objection.
"The Clerk: The Judge will be here in just a second.
"Mr. Preddy: I'll skip that point for the minute, and come back to it as soon as the Judge can get here to argue.
"But you see, ladies and gentlemen, that I sat quietly and made no objections whatsoever while Counsel 
"Mr. Beckham: Yes, sir, because I made a proper argument; but I am not going to stand here and let you make an improper argument, sir.
"Mr. Preddy: Is the Judge coming?
"The Clerk: Yes, he'll be here in just a minute.[2]
"(Thereupon the Court returned to the courtroom, and the following proceedings were had in the presence and hearing of the jury:)
"The Court: What is the objection, gentlemen?
"Mr. Beckham: Your Honor, Mr. Preddy is trying to draw some kind of an inference from the fact that Mr. Collins Underwood was kept here and was not called by us as a witness. Now the record shows that we gave him his name and answers to his interrogatories, which were given months ago, that he has never made any attempt to take his deposition, he has never made any attempt to get any statement from him, that he saw him here.
"Mr. Preddy: Now, your Honor, none of this is in evidence; not one bit.
"Mr. Beckham: That he saw him here on Friday, that he has not gotten him under any subpoena; and now he is trying to draw an inference from the fact that we did not keep him here after he had been here a week over the weekend and having him here to testify today; and it's completely improper for him to comment on this, under these circumstances, and I object to it.
"Mr. Preddy: Now, if your Honor please, I have researched this many times, and counsel may comment upon the failure of the other side to call a witness. This is the established law and the rule of this jurisdiction and I have a perfect right to comment on the fact that Mr. Beckham spent two hours here, Friday afternoon, killing time, with Mr. Skelton on the stand, repeating two or three times, while he had the witness outside, and didn't call him; and then didn't take his deposition or present his evidence or anything. I have no idea what he would say except what he told Mr. Skelton at the scene of the accident.
"Mr. Beckham: Your Honor, there's an affidavit  it's right here in the record *480  and I will stipulate to put it into evidence.
"Mr. Preddy: Prepared by a lawyer, that I can't cross-examine.
"Mr. Beckham: Certainly, with a copy of his affidavit  and this is completely improper, if he says he didn't have a chance to examine him. He was just as available to him as he was to us. We had no control over the man.
"The Court: I think it's very unfair comment to mention the fact that the colored man was not called. You had an opportunity to call him, you had an opportunity to take his deposition, you had an opportunity to bring it before this jury. And I don't want to hear any more comment about the man not being called.
"Mr. Preddy: Well, I'll salvage what I can.
"The Court: Now that's unfair comment, too, Mr. Preddy; and you just say one more thing and I'm going to send you upstairs.[3]
"That's extremely unfair, ladies and gentlemen of the jury. He's trying to appear before you as a persecuted lawyer not without a chance and it's not true. He had every opportunity in the world to have that colored man here and have his testimony before this jury. Now he says he'll salvage what he can because I made an adverse ruling against him.
"I don't like the implication at all; and one more step out of line, Mr. Preddy, and you go upstairs. Every time I try a case with you, this occurs. Every time. You're at least consistent.
"Now proceed; see what you can salvage.
"Mr. Preddy: Thank you, your Honor.
"The Court: And that wasn't anything for you to thank me, either."
Thus it is revealed that although defendants' attorney was mistaken on the law, he was not shown to have acted other than in good faith in attempting to comment on the failure of plaintiff to produce the witness. There was no justification, in ruling on the objection, for the trial judge to accuse him of unfairness and hold him up to contempt before the jury. All the court was required to do was to overrule or sustain the objection. Appellee argues, however, that the court was justified in what was said to defendants' attorney because the latter, after the ruling on the objection, gave the court provocation by stating: "Well, I'll salvage what I can." We do not agree, because even if that statement by defendants' attorney was improper, and we feel it was, he should not have been subjected before the jury to the treatment he received from the trial judge. It should be noted that when defendants' attorney said: "Well, I'll salvage what I can," he did so after the court, in addition to ruling against him, had accused him of being unfair and had placed blame on him for not calling and presenting the testimony of the same witness. The court's statement had prejudiced him before the jury and left him at a distinct disadvantage. He was like a prize fighter who has been floored, and must pick himself up and defend as best he can. The court then called him "extremely unfair," accused him of an improper implication, and threatened him with contempt for "one more step out of line"; and then the court referred to the attorney has having been guilty of misconduct before the court in other cases.[4]
*481 The judge presiding at a trial should maintain an impartial attitude. He must appear neutral, and exercise patience toward the participants. The judge should not be thrown off balance by those provocations which a trial contest can be expected to produce. Even if exposed to great provocation, the trial judge is not thereby justified in accusing a party's lawyer of unfairness or in holding him up to contempt before the jury, and should not show hostility to him or otherwise treat the attorney so as to prejudice the interests of his client. The required administration of the trial and necessary control of conduct of counsel can and should be performed effectively without inflicting unnecessary damage to a party's cause. See Florida Motor Lines Corporation v. Barry, 158 Fla. 123, 27 So.2d 753, 756; Cone v. Cone, Fla. 1953, 68 So.2d 886; Giglio v. Valdez, Fla.App. 1959, 114 So.2d 305; In re Parkside Housing Project, 290 Mich. 582, 287 N.W. 571, 577-578; Hansen v. St. Paul City Ry. Co., 231 Minn. 354, 43 N.W.2d 260; Harms v. Simkin, Mo. App. 1959, 322 S.W.2d 930, 938; Duncan v. Pinkston, Mo. 1960, 340 S.W.2d 753; Buckley v. 2570 Broadway Corp., 12 A.D.2d 473, 207 N.Y.S.2d 484; 53 Am.Jur., Trial, § 90; 88 C.J.S. Trial § 49, pp. 127-128. In the case of Brown v. Walter, 2 Cir., 1933, 62 F.2d 798, 800, the late great Judge Learned Hand admonished: "Justice does not depend upon legal dialectics so much as upon the atmosphere of the court room, and that in the end depends primarily upon the judge."
The record in this case as quoted above shows bias and hostility of the court against defendants' attorney and uncalled for censure of him which disparaged him in the eyes of the jury. Such departure from strict impartiality is quickly detected by jurors upon whom the influence of the trial judge is immense. Jurors tend to condemn the side the judge condemns and approve the litigant he appears to favor. We therefore feel that the attitude and remarks of the learned circuit judge which were directed to the defendants' attorney were such as to clearly and materially prejudice the defendants' rights. As said by the second district court of appeal in Giglio v. Valdez, supra [114 So.2d 307], "When the trial gets out of bounds, or when the judge demonstrates his ill-feeling and animosity toward one of the lawyers, it is not the lawyer who suffers. Rather it is his client who is being deprived of the high level of justice that is the handiwork of a fair, temperate and impartial mediator in the judge's chair."
For the reasons outlined above, we are of the opinion that in the interest of justice a new trial should be granted in this case, and the judgment accordingly is reversed. On thus disposing of this appeal, we omit ruling on other questions raised, except one dealing with a certain charge given to the jury which on retrial should not be repeated. In the course of the charge the court read from the Alabama statutory rules of the road a portion of the section entitled "Right of way" dealing with vehicles approaching or entering an intersection at approximately the same time and giving the one on the right (which would be the plaintiff here) the right of way.[5] The appellants argue correctly that this statutory provision is not applicable to a through highway-stop sign intersection, but only to one not so controlled. This becomes apparent on reading the provisions of the next section of the Alabama statute, entitled "Exceptions to the right of way rule," in which it is provided that a driver entering a through highway or an intersection controlled by a stop sign must yield.[6]
Reversed and remanded for new trial.
NOTES
[1] Subject to exceptions not applicable here, this is recognized as a correct ruling. See Annotation 5 A.L.R.2d 893, 940-41 (1949); 53 Am.Jur., Trial, § 475.
[2] No point was made of the absence of the trial judge from the court room during the argument, or of the effect on the trial of the interruptions by counsel and exchanges between them which occurred during that interval. As to the duty and need for the trial judge to be present, and the effect of his absence, see Heflin v. United States, 5 Cir., 1942, 125 F.2d 700; Dickson v. Mendenhall, 7 Ill. App.2d 295, 129 N.E.2d 275; Caesar v. Wegner, 262 Wis. 429, 55 N.W.2d 371; 32 Fla. Jur., Trial, § 8; Annotation, 34 A.L.R.2d 683 (1954).
[3] It was common knowledge that the county jail then was housed in the upper floors of the court house.
[4] Censure of counsel for alleged misconduct in cases other than the one on trial has been held to be reversible error. Roy v. United Electric Rys. Co., 52 R.I. 173, 159 A. 637, 640. See 88 C.J.S. Trial § 49, p. 127.
[5] Code of Ala., Title 36, § 18(a).
[6] Id., § 19(c) and (d).