203 So.2d 194 (1967)
Jack Ernest BAISDEN, Appellant,
v.
STATE of Florida, Appellee.
No. 1057.
District Court of Appeal of Florida. Fourth District.
September 29, 1967.
Rehearing Denied November 1, 1967.
W. Ted Whidden, Deerfield Beach, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and Fred T. Gallagher, Asst. Atty. Gen., Vero Beach, for appellee.
WEISSING, LOUIS, Associate Judge.
This is an appeal from judgment and sentence imposed on a jury verdict finding the Defendant-Baisden guilty of robbery. The defendant appeals, and we affirm. Evidence of guilt is strong; however, the issue on appeal is whether or not the defendant obtained a fair trial.
Six points are raised on appeal. Five are insufficient to warrant treatment by *195 this court by way of opinion. One point raised, however, deserves mention. During the cross-examination of the state's chief witness, defense counsel began asking a series of questions without apparently giving the witness, Coonce, an opportunity to answer each question individually. The record reflects several pairs of questions asked before the Assistant State Attorney finally interrupted and objected because defense counsel was attempting to confuse the witness. The trial court indicated that the question asked was in reality three questions and admonished counsel to ask only one question at a time. This sound advice was gradually ignored and the record is full of two, three, and even four-part questions. The trial court finally interceded on its own motion and the following colloquy took place:
"THE COURT: Are these questions, Mr. Whidden 
"MR. WHIDDEN: Yes, sir 
"THE COURT: Just be quiet while I am speaking. I tell you now, if you are asking questions, ask one at a time and allow the witness to answer. The witness is not on trial, and keep your voice at a normal conversation. Ask the questions and we will get an answer.
"BY MR. WHIDDEN:
"Q. Is that right?
"A. What is your question?
"THE COURT: I will strike that question. Ask a question that is one question.
"Q. Mr. Coonce, you are not positive about your identification of Mr. Baisden, isn't that correct? You are not positive about how any of them looked, isn't that correct?
"* * *
"THE COURT: Those are two questions, sir, and you have disregarded my request.
"BY MR. WHIDDEN:
"Q. Answer the second question first. Do you know what they looked like generally, except that they were 
"THE COURT: Mr. Lee, [sic: Whidden] this is about the fourth time you have disregarded my instructions, and I may have to hold you in contempt if you continue to do so. If you will ask one question and allow the witness time to answer, we might get an answer. If you are going to continue to badger him with questions, I will stop the examination at this point."
On appeal the defendant argues the court interrupted and reprimanded the defense counsel during his cross-examination of a material witness at a critical stage of the trial, thus committing prejudicial error. In support of his position, he cites two cases, Giglio v. Valdez, Fla.App. 1959, 114 So.2d 305, and Skelton v. Beall, Fla. App. 1961, 133 So.2d 477, 94 A.L.R.2d 820. This court has no quarrel with the propositions of law involved in the cases relied on by defendant and would even go so far as to relying on those cases to buttress its position in this appeal. The cases which the defendant cites to induce this court to reverse on the grounds that the "rebuke" of counsel was reversible error all presuppose one thing  that is that the court improperly admonished counsel in the presence of the jury. The general rule now seems to be that the prior unbridled discretion of trial judges to discipline and rebuke counsel, justifiable or not, has gradually broken down and because of a change in the attitude of courts the position now seems to be that the defendant is entitled to have his counsel treated with civility and respect. See 62 A.L.R.2d 170, 181. Counterbalanced to the above proposition is the trial court's duty to maintain a proper forum and decorum in trials and to protect parties, attorneys, witnesses, court personnel, juries, and the public from any infringement of the due and orderly process of administering justice. The trial court is under a positive duty to conduct an orderly trial, and the *196 public, as well as the persons more directly involved, have the right to look to the judge for guidance, for the maintenance of dignity, and decorum so essential to the proper administration of justice and, in short, the trial court embodies the personification of fairness and equality before the law. Giglio v. Valdez, supra; 32 Fla.Jur., Trial, § 24. Thus, when the respect of the court, the respect and courtesy due a witness, a party or another attorney is violated, the court has a duty to see that the unjust intervenor is stopped. Usually counsel will initiate this procedure by voicing an objection or other appropriate motion. At times, however, counsel through inadvertence or design, will not object and let the wrongdoer suffer. The wrongdoer must then suffer the censure of the court. If feasible and practicable, a rebuke from the bench at an attorney ought to be directed in the absence of the jury. This has been recognized as the better practice, but is not necessarily an essential practice. See Olive v. State, 1938, 131 Fla. 548, 179 So. 811. Rules of practice and their employment in their conduct of trials are not inflexible. Their strict technical enforcement cannot straight-jacket the justice of the cause. Primarily, they are formulated and employed so that the court may regulate and keep within legal bounds the general conduct of the trial. This court has always recognized that a trial court has wide latitude in regulating the conduct of trials. See Hahn v. State, Fla. 1952, 58 So.2d 188, 191. The conduct of counsel during the progress of the trial is also under the supervision and control of the trial court in the exercise of its discretion. See the strong rebuke directed at an attorney in Murray v. State, 1944, 154 Fla. 683, 18 So.2d 782, reversed on other grounds.
Thus it is readily seen without citing any other authorities that the court has a duty to maintain the dignity of the law in the courtroom which also includes the protection of witnesses under examination. The reasons for this are quite simple and readily apparent:
"Except in the case of a few privileged relationships, there is a compelling social interest that both the state and the accused shall have the power to require anyone in possession of knowledge relevant to the subject matter of a criminal trial to give testimony. But an unwonted appearance in court as a witness is a terrifying experience to many persons, even if their apprehensions are exaggerated.
"Besides detracting from the court's dignity, unnecessary browbeating and humiliation of witnesses can, by interfering with their recollection and articulation, defeat the purpose of their presence at the trial  to divulge their information to the jury. And more generally, the dread of testifying can result in crime going unreported. The protection of witnesses from the attacks of attorneys is therefore recognized as a part of the duties of the judge, and he has everywhere all needed authority to see that their visits to court are as little harrowing as may be.
"But posed against this is one of the cornerstones of our legal system, the right to scrutinize and sift testimony by cross-examination.
"The loose, cloudy, and hard-to-apply principle that emerges is that the judge, so long as he does not hobble fair and effective examination, may take all needed measures against an attorney to insulate a witness from discourtesy and embarrassment. The nicest sort of judgment is required to distinguish between the need to spare a timid witness, such as the proecutrix in a case involving a sexual offense, from wanton mortification, and the basic requirement that the accused shall have full opportunity to save himself from unmerited punishment by bringing out inconsistency, bad repute, and all the other painful indicia of lying." 62 A.L.R.2d 170, 244.
The test whether these alleged rebukes of the court constituted reversible error *197 should be as follows and as outlined in State v. Faust, 1961, 254 N.C. 101, 118 S.E.2d 769, 779, 96 A.L.R.2d 1422:
1. [T]he burden is upon appellant to show prejudice.
2. [I]t is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for.
3. [T]he remarks are to be considered in the light of the circumstances under which they were made.
4. [T]he ultimate consideration is the probable effect of the language upon the jury.
As concerns the effect of the language we do not think that the instant "rebuke" was even a slight lapse from the severe judicial decorum placed upon trial judges. See, for instance, Bellamy v. State, 1908, 56 Fla. 43, 47 So. 868. We think it was a highly proper rebuke under the circumstances couched in proper terms and language. The court in the instant case repeatedly asked defense counsel to ask one question at a time. Not only did defense counsel initiate the disruption of an orderly trial by asking improper questions, but indeed he proceeded in the face of adverse rulings and continued to examine the witness in a manner forbidden by law as well as by good manner, as well as by the court. Where the defendant's counsel has asked highly improper questions and the prosecutor replies, defendant's claim of foul will not usually entitle him to a mistrial. See Evans v. State, Fla.App. 1965, 178 So.2d 892. It stands to reason then, where the defense counsel repeatedly disregards the court's instruction, then his claim of foul when his hands are slapped will fall on deaf ears, and this court is reluctant to overturn a trial judge's action and reverse the conviction. Just as it is on the one hand the trial court's duty, whether requested or not, to check improper remarks of counsel to the jury, see Higginbotham v. State, 1944, 155 Fla. 274, 19 So.2d 829; Barnes v. State, Fla. 1951, 58 So.2d 157, it is also its duty to protect the witness under interrogation, whether requested or not, when counsel's zeal and conduct of such interrogation overstep the bounds of propriety. The guide line to be followed in reviewing the trial court's exchange with defense attorney is lucidly stated in Crews v. Warren, Fla.App. 1963, 157 So.2d 553, 561, by the late Judge Sturgis:
"As has often been said, an appellee court cannot recreate the stage or settings of the drama enacted before the trial judge. It deals with the cold record, and in so doing accords to the trial judge's actions a full and complete attitude of fairness and impartiality, upon which rests the very foundation of our system of jurisprudence and the concept of justice under the law. When confronted with excerpts from that cold record, as in the case on review, for the purpose of demonstrating error on the ground that the trial judge unduly participated in certain phases of the trial  that his acts were not impartial and therefore prejudicial  the acts complained of must be viewed in the light of the entire record and with due awareness of the fact that he was in a peculiarly advantageous position to observe the nuances and implications of all that transpired; that his was the delicate and important responsibility of reducing the extremes of the tensions and voids of the drama to as temperate a norm as the circumstances would permit. To that end a trial judge must be and he is vested with the duty and broad power to do those things reasonably necessary to insure the integrity of the trial over which he presides. * * * Generally, it is his duty to so control the orderly processes and progress of the cause over which he presides that justice under the law may prevail."
To accomplish this end, the trial judge in the instant case has provided us with the courtroom setting by his description of defense counsel's cross-examination. This came about when defense counsel in his motion *198 for new trial and judgment n.o.v. argued the rebuke as prejudicial error during the post-trial proceedings. The trial court described the scene as follows:
"With regard to this matter of defense counsel badgering the witness, this cold printed record, that will be available, will not disclose the tone of voice or the volume of voice that counsel used at that time. While defense counsel's entitled to use any proper method of conducting its case, badgering a witness, shooting questions in a staccato manner and raising his tone of voice in a TV dramatical fashion is not a proper method and will not be condoned by any Court. It is the Court's duty to protect witnesses from such conduct, any witness for the State or for the defense, and the Court did step in."
We are bound thereby and find no error in rebuking defense counsel in the presence of the jury in light of counsel's self-destructive instinct in producing the rebuke because no prejudice was shown; because no improper language per se was used by the court; and finally because the trial judge was eminently correct in rebuking defense counsel for improper examination of a witness; in fact, under the circumstances of this case, he was under a duty to do so.
We repeat and adopt the statement contained in Olive v. State, supra, wherein improper argument was made before a jury and counsel making the argument was rebuked by the trial judge in the presence of the jury:
"The lower court did not require the jury to retire when the proceedings, supra, occurred. It has not been made to appear that reversible error was committed. The ruling on the part of the court clearly shows that the proceedings were beyond all legitimate bounds, and that it was in keeping with proper court decorum. The responsibility rested on the court to give to the defendant a fair and impartial trial. It is possible that the better procedure would require the retirement of the jury when the court was reprimanding counsel, but at the most only harmless error was committed. The responsibility rests with the attorneys as officers of the court to aid and assist the court in the administration of the law. In stubbornly contested suits sometimes the duty of counsel to the court is occasionally overlooked or disregarded, but the solemn responsibility to administer the law and dispense justice rests with the court and all possible assistance should be given."
The proper limitation of cross-examination and the range to be permitted during such examination is a matter that in criminal cases as well as in civil cases, lies within the sound discretion of the trial court. See Revels v. State, 1912, 64 Fla. 432, 59 So. 951; Hathaway v. State, Fla. App. 1958, 100 So.2d 662. Under the circumstances, defense counsel should have trimmed his sails to the judicial wind as prevailed in the courtroom. See United States v. Bolden, 7th Cir.1966, 355 F.2d 453. The controlling principle thus is clear when a defense attorney disobeys the direct command of a judge. The attorney must swallow his disappointment, save the point for review, and wait until later, if it is error, to be corrected. Meanwhile, he must submit to the judge. With almost unbroken regularity the courts have declined to disturb the conviction because the judge reprimanded or punished the defendant's attorney for failing to respect rulings. See 62 A.L.R.2d 170, 233. We see no reason not to follow that rule to the end as stated by the late great Judge Learned Hand, "Justice does not depend upon legal dialectics so much as upon the atmosphere of the court room, and that in the end depends primarily upon the judge." Brown v. Walter, 2d Cir.1933, 62 F.2d 798, 800; Skelton v. Beall, supra, 133 So.2d at 481.
ANDREWS, J., concurs.
CROSS, J., dissents.