402 So.2d 461 (1981)
Ray SANDSTROM, Appellant,
v.
STATE of Florida, Appellee.
No. 79-649.
District Court of Appeal of Florida, Fourth District.
July 22, 1981.
Rehearing Denied September 16, 1981.
*462 Ray Sandstrom of Sandstrom & Haddad, Fort Lauderdale, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Paul H. Zacks, Asst. Atty. Gen., West Palm Beach, for appellee.
BERANEK, Judge.
This is an appeal by an attorney from a final judgment and sentence of direct criminal contempt. We affirm.
Appellant was defense counsel in a murder prosecution. He was found in contempt and sentenced to thirty days in jail during the trial. The trial court entered the following order:
THIS CAUSE came on before the Court upon demand by the Court of Counsel of the above styled case, Ray Sandstrom, why he should not be found in direct criminal contempt for failure to abide by the Courts rules in regard to his manner of interogation of a witness, Willie Edson, concerning prior testimony given by Willie Edson and which had previously been transcribed. The State contended that Attorney Sandstrom was misquoting statements allegedly made by the witness. Mr. Sandstrom agreed that at times he would misquote and contended that it was proper for him to do so. The Court instruted him that if he read statements from the transcript that he was to quote exactly. Mr. Sandstrom was not in agreement and refused to comply with the Courts demand and refused to proceed with the interogation. The Court instructed him to proceed with the Courts Order or to release the witness both of which he refused to do. The Court then read Rule of Criminal Procedure 3.830 to the Defendant asking him to respond to why he should not be found in contempt to which Mr. Sandstrom responded and the Court found the response to be unsatisfactory. The Court asked Mr. Sandstrom if he had any evidence to present of mitigating or excusing circumstances. Mr. Sandstrom did not present any excusing or mitigating circumstances and the Court found and thereby adjudged Mr. Sandstrom in direct criminal contempt and sentenced him to thirty (30) days in jail and gave him the opportunity to have the Court vacate the Order by again having the witness placed on the stand and comply with the Court's Order regarding interogation. Mr. Sandstrom again refused and this Court Ordered the Defendant bodily taken to the jail and placed in custody to serve thirty (30) days for direct criminal contempt of Court. The Court Ordered the jurors to go home, directing them to remain available both at work and at home by disclosing their phone numbers to the respective places. The Court informs the Defendant that it may consider mitigation of the sentence by apologizing to the Court for the disruption that he has caused and by agreeing to continue with the interogation of the witness in accordance with the Court's order.
DONE AND ORDERED in Chambers, Fort Lauderdale, Broward County, Florida *463 this 14 day of March 1979. (Order reproduced verbatim.)
On appeal, it is asserted that the trial judge should have disqualified himself and that the conduct of appellant was such that a finding of contempt constituted an abuse of discretion. We reject both arguments.
When the State Attorney objected and pointed out that defense counsel was misquoting the transcript, the trial court unequivocally sustained the objection and directed counsel as to the proper method of cross-examination. Instead of accepting this ruling, appellant launched into a vehement and extended dialog with the court. Appellant's position was that he could pretend to read from the transcript by making up questions and answers and thereby impeach the witness. Counsel repeatedly asserted the trial judge was wrong, that he was right, that his method of cross was a "recognized" method and that he would continue with it. Counsel rudely argued at length to this effect. He refused, in the face of repeated specific orders from the judge, to disclose the page he was pretending to read from and repeatedly urged that he could intentionally misquote if he chose to do so. The court repeatedly ruled this to be improper but appellant directly refused to follow the judge's instruction. He proclaimed the court was wrong, and that his cross-examination could not be interfered with in any manner. At a point, the judge inquired as to whether counsel would release the witness and cease his cross-examination. Counsel refused to comply and again began his improper questioning. He refused to disclose the page number, refused to quote correctly, and left a pending question before the witness despite the court's specific instruction that the witness not answer it. The court then again instructed counsel to proceed in four separate direct verbal orders. In response to each of these four separate verbal orders, counsel proclaimed he would not proceed and that he was "waiting for an answer." Despite numerous efforts by the trial judge, counsel never retreated from his position that he was right and the judge was wrong and that he would cross-examine in his own manner.
Eventually, the court cited appellant for direct criminal contempt, advised him of the charge against him and gave him an opportunity to show cause why he should not be found in contempt. The court also gave him the opportunity to present evidence of mitigating circumstances. When the court formally asked him to state his reasons for his direct disobedience, he simply argued again that he could not be compelled to cross-examine in the fashion ordered by the judge. Even when the court specifically inquired under Rule 3.830 as to whether he wished to offer testimony or evidence, appellant declined to do so and continued to argue the legal issue of cross-examination.
A direct criminal contempt occurring in the presence of a trial judge may be punished immediately and summarily. See Rule of Criminal Procedure 3.830. Under such circumstances, the trial judge need not disqualify himself unless he has become directly and personally embroiled. Mayberry v. Pennsylvania, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971) is a leading exposition on the subject of the disqualification of judges in contempt proceedings. The United States Supreme Court stated in relevant part as follows 91 S.Ct. at pages 504 and 505:
Instant treatment of contempt where lawyers are involved may greatly prejudice their clients but it may be the only wise course where others are involved. Moreover, we do not say that the more vicious the attack on the judge the less qualified he is to act. A judge cannot be driven out of a case. Where, however, he does not act the instant the contempt is committed, but waits until the end of the trial, on balance, it is generally wise where the marks of the unseemly conduct have left personal stings to ask a fellow judge to take his place... .
... .
It is, of course, not every attack on a judge that disqualifies him from sitting. In Ungar v. Sarafite, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921, we ruled that a *464 lawyer's challenge, though "disruptive, recalcitrant and disagreeable commentary," was still not "an insulting attack upon the integrity of the judge carrying such potential for bias as to require disqualification."
Here, the trial judge chose to act immediately rather than waiting till the conclusion of the trial. This was proper and required because counsel would not proceed in accordance with the court's directions. In accordance with the Mayberry decision, instant and immediate punishment for contempt militates against disqualification. Our review of the transcript convinces us that the judge was not required to disqualify himself herein.
The conduct of counsel here was clearly of a character sufficient to warrant the finding of criminal contempt. This Court's decision in Baisden v. State, 203 So.2d 194 (Fla. 4th DCA 1967), is on point. There, a dispute arose between defense counsel and the trial judge over the propriety of certain questions on cross-examination. This Court stated as follows at page 198:
The proper limitation of cross examination and the range to be permitted during such examination is a matter that in criminal cases as well as in civil cases, lies within the sound discretion of the trial court. Under the circumstances, defense counsel should have trimmed his sails to the judicial wind as prevailed in the courtroom. The controlling principle thus is clear when a defense attorney disobeys the direct command of a judge. The attorney must swallow his disappointment, save the point for review, and wait until later, if it is error, to be corrected. Meanwhile he must submit to the judge. (Citations omitted.)
Here, even if the trial judge's ruling on the mode of cross-examination had been incorrect, counsel should have complied with it and brought the matter to the appellate court.
Appellant urges before this Court that he could not have been guilty of contempt because he was merely trying to preserve the record as to his unsuccessful attempts at cross-examination. He argues he only declined to proceed with cross-examination and that such conduct cannot be contemptuous as a matter of law. This argument fails because it disregards counsel's own prior conduct. When held in contempt, appellant was already guilty of contemptuous disobedience to the Court's orders. A further act of disobedience after the contempt finding was unnecessary. The entire record compels the conclusion that appellant intentionally and steadfastly refused to comply with a lawful court order and that such conduct substantially interfered with the trial of the cause and eventually resulted in a mistrial. We conclude that Rule of Criminal Procedure 3.830 was adequately complied with and that the court did not abuse its discretion in finding defendant in contempt and sentencing him therefor. The judgment and sentence below are affirmed.
AFFIRMED.
GLICKSTEIN, J., and SIMONS, STUART M., Associate Judge, concur.