619 So.2d 23 (1993)
Eldred OATES, Appellant,
v.
STATE of Florida, Appellee.
Nos. 92-1818, 92-1859.
District Court of Appeal of Florida, Fourth District.
May 26, 1993.
Rehearing Denied June 23, 1993.
*24 Richard L. Jorandby, Public Defender, and Paul E. Petillo, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Melynda L. Melear, Asst. Atty. Gen., West Palm Beach, for appellee.
KLEIN, Judge.
Defendant appeals his conviction of petty theft, resisting an officer without violence, and contempt.
After selection of the jury, defendant, who was represented by counsel, began interrupting the proceedings and refused to heed the court's requests to be quiet. The following are two pages which are typical of what went on for over 30 pages in the transcript:
THE COURT: I want you to be quiet so I can get on with this trial.
THE DEFENDANT: You're not giving me a fair trial.
THE COURT: The record will reflect that.
THE DEFENDANT: You're not giving me a fair trial.
THE COURT: The record will reflect your opinion and the Fourth District Court of Appeals will rule on that.
THE DEFENDANT: He didn't even answer to my demand for discovery.
THE COURT: It's too late. You've already demanded a speedy trial.
THE DEFENDANT: And then he subpoenaed my mama, and my wife in today. He didn't subpoena them. You know what I'm saying. You did  You call the name out.
THE COURT: That's enough now. We're ready to start the trial, sir.
THE DEFENDANT: But you're not going to give me a fair trial, Mr. Goldstein.
THE COURT: That will be up to the Fourth District Court of Appeals to decide.
THE DEFENDANT: You denied all my medical attention. You took my bonds for no reason. Now you want to try to rush me through the process.
THE COURT: Sir, do you want to watch this trial on closed circuit T.V. or do you want to see it here where 
THE DEFENDANT: I'd rather watch it on T.V.
THE COURT: You'd rather watch it on closed circuit T.V.?
THE DEFENDANT: Yes.

*25 THE COURT: You understand the jury could wonder why  what is going on? They could think you're a bad person because of doing that.
You will be able to see them. They're not going to see you. They're going to be wondering why you're not in the courtroom, you were here yesterday for jury selection and you were not here today.
THE DEFENDANT: I'd rather watch it on T.V. on Channel 4 News.
THE COURT: That's 
THE DEFENDANT: Because, Mr. Goldstein, you're not giving me a fair trial, man.
I'm ready for trial. I'm ready to go to trial. You're not giving me a fair trial. That's the only thing I'm saying.
This guy here, he know what I'm talking about. You tightened the handcuffs all tight on my hands. He asked me about my case. He said he be glad when I go to prison. He done sentenced me, and I'm innocent. I done did nothing.
When the court's efforts to control its courtroom failed, it adjudicated defendant guilty of direct criminal contempt and sentenced him on the spot to six months. This did not deter the defendant, who continued to make the same kind of statements as set forth above, as well as additional statements about his sentence of six months, which he wanted to serve immediately instead of going to trial.
Defendant's counsel then moved for a mistrial based on the conduct of his client, which the court denied. After further outbursts from the defendant the court excluded the defendant from the courtroom, and made arrangements to try the case with the defendant watching the proceedings on closed circuit television. Defendant's exclusion from the trial as a result of his behavior was proper, Nixon v. State, 572 So.2d 1336 (Fla. 1990), cert. denied, ___ U.S. ___, 112 S.Ct. 164, 116 L.Ed.2d 128, (1991), and Shepherd v. State, 453 So.2d 215 (Fla. 5th DCA 1984), and has not been raised as an issue on this appeal.
The next morning an article about this case appeared in the Fort Lauderdale Sun-Sentinel, stating in part:
Some days, a judge just can't get any respect.
On Wednesday, Broward Circuit Judge Barry E. Goldstein took so much guff from a Fort Lauderdale man on trial for grand theft that he banished him from the courtroom.
So today, Eldred Oates, 30, will watch his trial via video.
While a video camera films the trial in Goldstein's courtroom, Oates will sit in Goldstein's chambers watching the case on television. A Broward sheriff's deputy will keep Oates company. "He was just being an obstinate jerk," Goldstein said.
Defendant then moved to disqualify the court based on the court's remark that defendant was "being an obstinate jerk," the contempt adjudication, and two other grounds which are without merit. The court denied the motion to disqualify.
The fact that the court held defendant in contempt did not require disqualification. The behavior of the defendant in this case was clearly of a character sufficient to justify direct criminal contempt. Unless a trial judge becomes personally involved in the conflict (and this judge did not), disqualification is not required. Sandstrom v. State, 402 So.2d 461 (Fla. 4th DCA 1981), rev. denied, 412 So.2d 470 (Fla. 1982); Wells v. State, 487 So.2d 1101 (Fla. 5th DCA), dismissed, 491 So.2d 281 (Fla. 1986).
The fact that the court said defendant was "being an obstinate jerk" is more troubling. As Judge Letts stated in his concurring opinion in Hayslip v. Douglas, 400 So.2d 553, 558 (Fla. 4th DCA 1981), "He who chooses to sit on the bench must forego the pleasures of oral condemnations therefrom which are unrelated to the furtherance of the cause at hand." It is ironic that the remark in this case becomes the focus of this appeal, since the trial court was doing everything it could do to protect the defendant from his own obnoxiousness before a jury.
*26 Although it would have been far better if the trial judge had not spoken to the press in the middle of this trial, and had not made the complained of remark, we have concluded, on these particular facts, that this remark did not require disqualification.
The issue is whether the court's remark was reasonably sufficient to create a well-founded fear on the part of this defendant that he would not receive a fair trial. Fischer v. Knuck, 497 So.2d 240 (Fla. 1986). We conclude that under these circumstances defendant could not reasonably have had a legitimate fear of not receiving a fair trial based on the court's remark.
A jerk is defined as a "stupid, foolish, naive or unconventional person." Webster's Third New International Dictionary 1213 (3d ed. 1966). No reasonable person could conclude, on reading the transcript in this case, that this defendant was not "being an obstinate jerk." Although it may be a distinction without a difference, the court did not say that the defendant was a jerk, only that he was "being" a jerk.
In Nassetta v. Kaplan, 557 So.2d 919 (Fla. 4th DCA 1990), the court set bond at $65,000 for a lawyer who had been charged with fraud and grand theft of $650,000. When defense counsel requested a reduction the court denied it, and commented off the record that he did not care whether the defendant got out of jail or not. This court denied a petition for writ of prohibition seeking to reverse a denial of a motion to disqualify based on that remark, stating:
A judge's remarks that he is not impressed with a lawyer's, or his client's behavior are not, without more, grounds for recusal. Id. at 921.
The amorphous meaning of the term "jerk," and the defendant's behavior which prompted the remark, considered together, lead us to conclude that the court properly denied the motion to disqualify.
We affirm all other issues except the adjudication of direct criminal contempt, which must be reversed because the court did not enter a written judgment which recited the facts constituting the contempt. Florida Rule of Criminal Procedure 3.830; Gidden v. State, 613 So.2d 457 (Fla. 1993).
Affirmed in part and reversed in part.
STONE, J., concurs.
POLEN, J., concurs in result only.