ROTHENBERG, J.
Tammy Owen Billie and Jimmy Bert (“the defendants”) and their current counsel, Lewis Tein, PL (“the Lewis Tein law firm”), petition this Court for a writ prohibiting Judge Ronald Dresnick from presiding over the post-judgment matters still pending before the trial court. Because the trial court’s comments, when read in the context in which they were made, do not require disqualification, we deny the petition.
The underlying lawsuit arose out of a tragic accident that occurred on Tamiami Trail ten years ago. The accident, in which Gloria Liliana Bermudez was killed and her husband Carlos Bermudez and their minor child were injured, resulted in a $8,177 million judgment rendered on August 5, 2009, against the defendants, who are members of the Miecosukee Tribe of Indians of Florida (“the Miecosukee Tribe” or “the Tribe”). On July 21, 2011, nearly two years later, Judge Michael Genden, who was sitting in for Judge Dresnick, granted the plaintiffs’ motion for attorney’s fees, filed pursuant to section 57.105, Florida Statutes, as a sanction against the defendants and the Lewis Tein law firm for various objections to discovery, delay tactics, and other discovery abuses they committed to hinder the plaintiffs’ post-judgment collection efforts, which to date have resulted in the failure to collect even one cent on the judgment. Specifically, Judge Genden found the defendants’ general objections to discovery requests to produce documents that in fact did not exist, for example, tax returns, and the refusal, over a two-year period, to answer interrogatories regarding documents that did not exist, entitled the plaintiffs to re-coupment of their attorney’s fees as a sanction. Judge Genden’s order was not appealed.
On August 30, 2011, Judge Dresnick conducted a lengthy evidentiary hearing to determine the sanction amount. At this hearing, Andrew Harris, who provided trial support to appellate counsel for the plaintiffs in this case, testified as to the value of the legal work provided to the plaintiffs; opined that the number of hours expended and the fees charged were reasonable; and speculated that the Lewis Tein law firm probably billed two to three million dollars in the post-trial phase of the case. While cross-examining Mr. Harris, Mr. Tein asked him the following questions:
And, in fact, would it surprise you to know that we haven’t been paid a cent in this case for over a year?
[[Image here]]
And, in fact, it doesn’t surprise you because you know that the Defendants don’t have the money to pay the judgment. That’s been your — what you found, right?
[[Image here]]
Do you want to withdraw your statement on direct, that you think we’ve billed two to $3 million in the post trial phase of this case, to make sure that the Court isn’t prejudiced at all by that?
[[Image here]]
And you’re not contending to Judge Dresnick that we’ve been paid by the Miecosukee Tribes of Indians, are you?
*276 After Mr. Harris responded that yes, he did believe the Lewis Tein law firm was directly paid by the Miccosukee Tribe in this case, Mr. Tein asked, “Do you have any evidence of that? ... And what evidence do you have that the Miccosukee Tribe paid a cent to us in this case?” Mr. Harris responded that he had no evidence because the Lewis Tein law firm did not provide the billing records requested, but he believed it was unlikely the law firm represented the defendants pro bono.
Subsequently, Mr. Tein testified under oath at this same hearing as follows:
Our client is not the Miccosukee Tribe. The Miccosukee Tribe is not a party to this case.
The affidavit ... is true. They [Tammy Billie and Jimmy Bert] have been responsible for our fees and they— they — at that time they had been paying our fees.
By January’ ll[sic] they had run up a — a receivable. They hadn’t paid since, my recollection is, August of 2010. And we haven’t been paid anything since August of 2010.
[[Image here]]
But it would be mixing the responsibilities of the Tribe with the responsibilities of the Defendants for a judgment. That would be the equivalent of saying that if someone is from Nicaragua, that the Nicaraguan, the wealthy Nicaraguan government has a responsibility to step in and pay the fee.
[[Image here]]
What [sanctions] you impose on me and the firm will come right out of my and Mr. Lewis’ pocket. Miccosukee Tribe will not be paying it. Tammy and Jimmie will not be paying it. And I want to make sure that’s — that’s clear.
On September 13, 2011, the trial court entered its sanction order. Although the plaintiffs requested a sanction in excess of $150,000 to cover the fees they incurred in their post-judgment collection efforts and proceedings, Judge Dresnick awarded only $3500 based primarily on Mr. Tein’s representations that: the Lewis Tein law firm represented the named defendants, not the Tribe, in this case; they were not trying to protect the Tribe from paying the judgment, as they were merely representing their individual clients who happen to be Miccosukee Tribe members; and the Tribe in no way was paying for this representation. Judge Dresnick specifically noted that, if “Mr. Lewis and/or Mr. Tein was in fact representing the Miccosukee Tribe in attempting to avoid paying this judgment the Court can assure both sides that the result of this order would have been significantly different.”
Shortly after Judge Dresnick issued his September 13, 2011, order awarding sanctions in the amount of $3500, counsel for the plaintiffs received sixty-one cancelled checks issued by the Tribe to the Lewis Tein law firm totaling $3.1 million for professional services rendered by the Lewis Tein law firm, in which it appears that at least $2 million was paid for the law firm’s representation of the defendants in this lawsuit.
After the plaintiffs received the can-celled checks for payments made directly by the Tribe to the Lewis Tein law firm, several individuals executed sworn affidavits stating that these payments were either charged against the defendants’ tribal distributions, or as loans from the Tribe to them against future distributions. Tammy Billie stated that the Lewis Tein law firm represented her since 2005 in this case as well as in other matters; she is solely responsible for paying the Lewis Tein law firm for her share of the fees; her sole income is from her tribal distributions and from various jobs she performs on the *277 reservation; and the checks issued by the Tribe to the law firm are charged against her current distributions and loans against future distributions. Billy Cypress, interim Chairman of the Tribe from 1987 to 1989, and Chairman from 1989 to December 2009, stated in his affidavit that the defendants were solely responsible for the fees charged by the Lewis Tein law firm; he directed the Tribe to write checks to pay these legal fees; and the payments were against the defendants’ current distributions and loans against future distributions. Julio Martinez, the Accounting Supervisor/Finance Officer for the Tribe from 1990 to 2009, stated the same in his affidavit.
Because these sworn affidavits conflict with earlier sworn testimony given by the defendants and call into question whether Mr. Tein’s representations at the August 30, 2011, hearing were truthful, the plaintiffs sought to depose several people including the defendants, Mr. Tein, Mr. Lewis, Billy Cypress, Julio Martinez, Mr. Roman (who provided the cancelled checks to the plaintiffs’ counsel at the direction of the current Chairman of the Tribe), and others. Specifically, the plaintiffs rely on the following testimony provided by the defendants in May of 2010, when they were deposed in aid of execution.

Jimmy Bert’s May 3, 2010, Deposition

When asked if he knew how much the jury awarded the plaintiffs in this case, Mr. Bert replied, “No.” He was also unaware if an appeal had been filed; did not know what legal fees he had incurred; had not received any invoices; and had not paid any legal fees. The following excerpts reflect questions posed by counsel for the plaintiffs, and answers provided by Mr. Bert through an interpreter, which accounts for the answers in third person.
Q: Have you incurred any legal fees with regard to the case that we’re here on today, Mr. Bert? Have you received any invoices? Have you received any documentation regarding the amount of legal fees that have been generated with regard to your representation in this case?
A: No, he doesn’t know.
Q: You’ve never received a single invoice for the defense or the representation that you have received from your attorneys in this case?
A: No, he’s never seen one.
Q: Have you paid your attorneys any amount of money at any point in time regarding your attorneys’ representation in this case?
A: No, not him.
Q: When you say “him,” who are you referring to?
A: Jimmie. He said no.
Q: Do you know who has been paying your legal fees with regard to your representation in this case?
A: He said he doesn’t know, but he thought the office paid.
Q: The same office where you pick up the $4,000 check, Mr. Bert? [referring to Mr. Bert’s disbursement checks].
A: Yeah, he — he—he thinks so. He doesn’t know.

Tammy Billie’s May 4, 2010, Deposition

Q: Who’s paying the legal bills for your representation in the civil case arising from the Bermudez accident?
A: I don’t know.
Q: Did you ever see any invoices — have you ever seen any invoices arising from your representation by Mr. Tein’s office and by Vivian Rosado’s involvement in this case regarding ... your defense, your representation in the civil lawsuit arising from the Bermudez motor-vehicle accident?
*278 A: I don’t know.
Q: Do you know how much has been paid to Michael Tein’s office as the result of your representation in this civil lawsuit?
A: I wouldn’t know. I don’t know.
On January 10, 2012, Judge Dresnick granted the plaintiffs’ motion to depose Mr. Tein, Mr. Lewis, and others to determine whether Mr. Tein committed perjury when he testified the Lewis Tein law firm was not paid by the Tribe for the firm’s representation of the defendants. These depositions were set for a two-week period, beginning the week of March 19, 2012. Thereafter, on February 6, 2012, Judge Dresnick granted the Lewis Tein law firm’s motion for a protective order, precluding the plaintiffs from videotaping Mr. Tein’s and Mr. Lewis’ depositions. On March 14, 2012, the Lewis Tein law firm filed a, motion to stay the depositions and evidentiary hearing. This motion was heard on March 19, 2012, and is the subject of the motion to disqualify Judge Dresnick and the instant petition for writ of prohibition.
THE MOTION TO DISQUALIFY AND THE PROHIBITION PETITION
In their motion to disqualify Judge Dresnick and their petition for writ of prohibition to this Court, the defendants and the Lewis Tein law firm (collectively, “the petitioners”) claim the judge has exhibited bias against them. Specifically, the petitioners claim that on March 19, 2012, Judge Dresnick “vindictively” reversed a prior ruling and “lost control” when he “yelled” at Mr. Tein, told Mr. Tein to “shut up,” threatened Mr. Tein with contempt, told Mr. Tein he was getting on his nerves, and stated that Mr. Tein might be better served by allowing Mr. Lewis to make the remaining arguments[1]. A review of the transcript of the March 19, 2012, hearing, however, paints an entirely different picture — one that reveals great restraint by the trial judge, and an attorney who either lost control or was intentionally trying to bait the judge. Whether Mr. Tein lost control or was purposely baiting the judge, the result was the same. Mr. Tein’s behavior was totally unprofessional, disrespectful, and disruptive. In short, his behavior was contemptuous.
The March 19, 2012, hearing was set by Mr. Tein to request a stay of the depositions scheduled for that entire week and the following week, to allow Mr. Tein to file an untimely certiorari petition to this Court, objecting to the trial court’s January 10, 2012, order allowing the plaintiffs to take depositions and setting an eviden-tiary hearing to determine whether the Lewis Tein law firm, and specifically Mr. Tein, had committed perjury and a fraud on the court. Rather than summarily denying Mr. Tein’s untimely motion to file an untimely petition, the trial court attempted to determine how many depositions had been scheduled for the week of March 19, how many were scheduled for the following week, and the availability of the witnesses to be deposed prior to the scheduled May 3rd hearing.
Rather than appreciating the good grace of the trial court in entertaining his untimely motion and allowing the trial court to make its inquiry, Mr. Tein repeatedly *279 interrupted the trial court’s inquiry and interjected that the scheduled depositions and evidentiary hearing were contrary to the law, out of bounds, and out of control, and that there was no legal basis for the trial court’s rulings. Additionally, the record reflects that Mr. Tein became so aggressive during this fifteen minute hearing, the trial judge had to admonish him for pointing his finger at the judge, and threaten to hold Mr. Tein in contempt of court if he did not stop interrupting and yelling over him and opposing counsel. In the nineteen page transcript of the hearing, on thirteen occasions, Mr. Tein characterized the proceedings as “out of control,” “contrary to the law,” or without any legal basis, and he interrupted the trial court or opposing counsel at least eighteen times, even after being admonished to stop interrupting and to be quiet.
The following is one example. The trial court asked opposing counsel, Mr. Rodriguez, whom he had scheduled to depose that week. While Mr. Rodriguez was attempting to list the witnesses, Mr. Tein interrupted, and continued to interrupt.
Mr. Tein: Your Honor, you asked him who was set and I’m the one who gets to argue right now.
Mr. Rodriguez: Furthermore—
Mr. Tein: In all fairness to me—
The Court: I’m trying to get information, please.
Mr. Rodriguez: If I may further respond, you Honor? Mr. Tein just made mention of James Robinson, an accountant. He made mention of Dexter Lehti-nen, Julio Martinez. Dexter Lehtinen and James Robinson were identified and disclosed as witnesses by Mr. Tein’s office. In fact, Your Honor—
Mr. Tein: Your Honor, this is not a trial.
Mr. Rodriguez: Let me respond.
Mr. Tein: He continues to argue. This is not a trial, your Honor.
The Court: He’s giving me some information. Please, I wish—
Mr. Tein: But it’s boundless.
The Court: Please.
Mr. Tein: He’s the one—
The Court: Please.
Mr. Tein: Did you see the article?
The Court: Please.
Mr. Tein: Judge, did you see the article that he did yest—
The Court: I want to hear from him.
Mr. Tein: Why? It’s just—
The Court: If I tell you again to shut up, I’m going to hold you in contempt. I’m trying to hear from him. Now be quiet.
We also feel compelled to note that the unprofessional conduct of the Lewis Tein law firm was not confined to Mr. Tein’s behavior at the March 19, 2012, hearing. The petition filed in this Court, signed by Mr. Lewis, fares no better. The language, mischaracterizations, and “spin” employed speak volumes.
In its petition to this Court, the Lewis Tein law firm characterized the trial judge as “petulant,” “vindictive,” and “out of control,” and characterized his rulings as “baseless.” The following represents some of the statements contained in the petition.
The Circuit Court responded petulantly and vindictively by penalizing counsel for daring to challenge the Circuit Court’s discretion....
There is no doubt the case spun out of control procedurally, largely because the trial judge appears unwilling to set things straight, even after conceding there was no factual support for “perjury.” It has also spun out of control, however, in terms of judicial temperament. Indeed, the judge’s loose reins *280 on his own temperament mirrors his loose reins on the process he is overseeing.
The Circuit Court’s High-Handed Reversal Exhibits Bias.
In addition to its recent threats, yelling, and erratic comments towards Petitioners’ lawyer and vindictive reversals, the Circuit Court’s irrational refusal to correct prior errors — that it admits are errors — demonstrates bias.
A trial judge has the right, and, in fact the obligation to control his or her courtroom and the proceedings, including taking corrective measures, when a party, witness, observer, or, as in this case, a lawyer becomes combative, disrespectful, or disruptive. To require disqualification of a judge whenever a party, witness, or lawyer’s behavior invokes an invited response by the judge, would encourage the behavior exhibited at this hearing as a means of “judge-shopping.” Livingston v. State, 441 So.2d 1083, 1086 (Fla.1983). More importantly, there is nothing this judge did or said to demonstrate bias or prejudice, or to suggest the judge will not decide the issues before him fairly and impartially. See Oates v. State, 619 So.2d 23, 26 (Fla. 4th DCA 1993) (finding disqualification of the trial judge was not required for stating the defendant was “being an obstinate jerk,” where “[n]o reasonable person could conclude, on reading the transcript in this case, that the defendant was not ‘being an obstinate jerk’ [and] ... the court did not say that the defendant was a jerk, only that he was ‘being’ a jerk”).
What we have here is a lawyer, and now lawyers, who have acted recklessly and unprofessionally, and are now concerned that their behavior may have tarnished their image. We have, however, reviewed the record and conclude that although the trial court was justifiably frustrated with Mr. Tein’s behavior at the March 19, 2012, hearing, he expressed no views as to Mr. Tein’s credibility, made no comment suggesting he had pre-judged any issue, harbored any bias or prejudice against the defendants, Mr. Lewis, Mr. Tein, or the Lewis Tein law firm, or said anything to support a finding that the petitioners’ fear that they will not enjoy the impartiality and neutrality of the judge in deciding the issues is reasonable. We, therefore, deny the petition, and remind Mr. Tein and Mr. Lewis of their obligations and responsibilities as members of The Florida Bar and as officers of the court.
Petition denied.
WELLS, C.J., concurs.
SHEPHERD, J., concurs in result only.

. The petitioners also cite to a comment made by Judge Dresnick at a hearing on August 30, 2011, and rulings the Lewis Tein law firm disagrees with. However, a trial court’s rulings are not grounds for disqualification; the objection to the comment cited is untimely; and the comment when read in the context in which it was made demonstrates no bias or prejudice against the petitioners. We, therefore, decline to address these arguments further.