**FLORIDA MOTOR LINES CORPORATION, a Florida Corporation, v. JOHN R. BARRY.**

27 So. (2nd) 753                                        June Term, 1946
November 8, 1946                                              Division B
Rehearing denied November 29, 1946

124

*Knight, Underwood & Cullen,* for appellant.

*Perry A. Nichols,* for appellee.

CHAPMAN, C. J.:

On September 28, 1944, John R. Barry, appellee, was a passenger on appellant's motor bus from West Palm Beach, Florida, en route to Camp Murphy and, when about one mile north of Juno Beach Cottages on U. S. Highway No. 1 and traveling in a northerly direction, the bus collided with a truck then being driven in a southerly direction on the same highway. The plaintiff below, John R. Barry, alleged in his declaration that he received permanent injuries as a proximate result of the collision due to the negligent and careless manner in which the motor bus was being operated at the time and place of the impact and injury.

The Florida Motor Lines Corporation filed a plea of not guilty to the declaration and on the day the case was called for trial, through counsel in the Court below admitted liability on its part. The language of counsel is: "The conclusion that we have come to in this case, from our investigation, is that this accident was sufficiently the fault of the Florida Motor Lines or its driver that we are ready now and ask the court to eliminate that issue from your consideration. . . . It is our position that the hip difficulty—fracture of the left hip—has given him some difficulty, and may give him some difficulty in the future. That you will have to hear from the doctors' lips, who are better in position to tell you the facts than we are." . . . "Gentlemen, with this frank statement to you we ask your

attention to these witnesses that come here. I appreciate the kindness of counsel in asking your consideration of our side of the case with equal part with his. That is what you will be called upon here to determine. You are holding us in your hands. You can do with us as you will.

"With that understanding, Your Honor, we have eliminated from this case all questions of liability. We place ourselves before the court on the medical testimony, and we are ready for it to come on.

"The Court: You have already stated quite plainly, and I don't suppose there is any need for me to say further that the defendant admits liability, and the only issue for the jury is the extent of the damages.

"Mr. Knight: That is right; and we say they must find a verdict in some amount for the plaintiff."

The record discloses a verdict and judgment for the plaintiff below in the sum of $20,000.00. In this Court, by brief and oral argument of counsel, it is contended that the judgment is excessive by some $10,000.00 or $12,000.00. In other words, the verdict and judgment as reflected by the testimony in the record should stand approved at a sum ranging from $7,500.00 to $10,000.00 and for no greater amount. When the case was on trial below it is argued that incidents, errors and irregularities occurred reasonably calculated to influence the minds of the jury in favor of the plaintiff and to the detriment of the appellant, thereby accounting for the excessiveness of the verdict and judgment. These alleged errors are the basis of nine questions posed and relied upon here for a reversal of the judgment appealed from.

Counsel for the appellant moved the court to enter an order of mistrial because of the following incident which developed during the trial:

"Mr. Nichols: Now did he make any complaint at all about having nausea or loss of appetite?

"Mr. Knight: I submit the doctor has answered that, both to Mr. Nichols and myself. I asked him to repeat it over again and there has been no testimony of that kind.

Mr. Nichols: If there hasn't been, then let's see if there is any now?

"Mr. Knight: It is suggestive.

"The Court: I don't think you need to imply that Doctor Vogt is going to give a false answer just because counsel suggested it.

"Mr. Knight: I don't in the least, Your Honor; but the question is nevertheless leading and is suggestive of the answer.

"The Court: Do you think that because this question is leading that this witness is apt to give an incorrect answer:

"Mr. Knight: No, Your Honor—

"The Court: Then why are we so concerned with leading questions?

Mr. Knight: I haven't insinuated it, nor given Your Honor any basis for such a remark; and I ask that you give consideration to me in this case for a slight amount, please sir.

"The Court: Do you remember the question, Doctor Vogt?"

The trial court denied the motion for a mistrial and presented here by this ruling are two questions: (a) were the questions as propounded so leading and suggestive as to constitute error; and (b) was the remark of the trial court, supra, when ruling on the objection interposed, prejudicial to the appellant—the remark being: "The court: 'Do you think that because this question is leading that this witness (Dr. A. F. Vogt) is apt to give an incorrect answer?'" Let us concede arguendo that the question perhaps was leading, can it be said that error resulted to the appellant from the answer of the witness? We cannot appreciate the logic on which the objection is based. We have held that a leading question is one that points out the desired answer and not one that calls for a simple affirmative or negative answer. Cookler v. Rhodes, 38 Fla. 240, 21 So. 109.

Considering the verdict, together with the extent of the injuries to the plaintiff, we are not able to conclude that it is likely and probable that the quoted remarks of the trial judge affected the verdict but in this respect consider it appropriate to cite the following:

"GENERALLY.—In jury trials the trial judge should be cautious and circumspect in his language and conduct before the jury. He must be fair to both sides, and the extent to which he may go in comments and remarks during the trial is governed by the fundamental principle that nothing should be said or done by him which will prejudice the rights of the parties litigant.

" . . . This includes remarks to counsel touching the management of the case and reflecting on their conduct, as well as those touching the character of the witnesses, and the value of their testimony." 53 Am. Jur. 75, Sec. 76.

"REMARKS TO OR RESPECTING ATTORNEYS. — A trial judge may not compliment one attorney at the expense of the other or on the other hand use language which tends to bring an attorney into contempt before the jury." 53 Am. Jur. 82, Sec. 88.

Under other circumstances we might be impelled to conclude it reversible for harmful error.

Appellant's second question is viz: Where the declaration claims specific injuries and specifically claims an injury to the right thumb, was it error for the court to admit evidence of injury to the left thumb, when the defendant had never been put on notice of such a claim? Plaintiff's declaration alleged that "his right thumb was badly bruised and had been stiff and useless." The testimony disclosed an injury or wound was not on the right hand but on the left, including the thumb. It is contended that plaintiff had not been placed on notice as to the injuries to the left hand and thumb, but had notice as to the claim of injury to the right. It is apparent that appellant could not be prejudiced by this testimony, and this assignment is without merit. We have considered questions three and four to hold that they are not well taken.

Appellant's fifth question is viz: In the trial of a personal injury case where liability is conceded and the issue is solely a question of the injuries and damage to the plaintiff, and where such evidence is largely limited to medical testimony, and where the rule for the exclusion of witnesses from a court room was invoked at the outset of the trial, was it error for the court to admit the testimony of one of the plaintiff's

physicians who remained in the court room during the giving of the testimony of another principal physician witness of the plaintiff, where objection to the giving of the testimony was timely made and motion to suppress the same was likewise made?

Arguments pro and con may be made reaching the conclusion that Dr. Manson's testimony was influenced or was not influenced by what he heard from other witnesses testifying in the cause as he sat in the court room. The trial court had the power under the law to suppress Dr. Manson's testimony but declined or refused so to do. The burden here rests on the appellant to establish reversible error as the case comes to this court on the presumption that no errors appear in the record. We hold that the rule enunciated in Romano v. Plazzo, 83 Fla. 243, 91 So. 115, is here controlling. We fail to find merit in question six posed by the appellant.

Appearing in the record are four charges or instructions upon the law desired by counsel for the appellant. We gather from the record that the charges or instructions desired were never given to the jury by the trial court. It is not clear from the record at what point in the case that the requested charges were placed with the court by counsel for the appellant. The record discloses a colloquy between the court and counsel for the appellant about the proposed special instructions. A part of the colloquy was in the presence of the jury and the remainder occurred in the absence of the jury. The requested instructions were not placed with the trial court during the progress of the trial but counsel wanted additional time for the instructions to come from the law office of counsel for appellant to the court room. The trial court declined to indulge counsel but charged the jury upon the law and submitted the issues to the jury for a verdict. It is contended that the court in this instance abused its discretion and thereby influenced the jury to the detriment of the appellant. Counsel for appellant failed to submit the alleged requested charges to the trial court before the jury retired and the judge did not abuse his discretion when he made his ruling.

It is next, and lastly, contended that the amount of the verdict is excessive. The plaintiff, John R. Barry, was a

soldier and 32 years of age when injured. He had a life expectancy of 33.92 years; by profession was a public accountant and tax specialist; he had employment with an accounting firm in the State of Pennsylvania, and his salary was $75.00 per week and expenses. He was married but had no children. Plaintiff, after the injury, was sent to the Army Air Forces Hospital at the Biltmore Hotel, Coral Gables, Florida. He was treated in a Government Hospital for about nine months and during the time was required to wear a cast from his ribs to his toes, and was given a disability discharge during the month of June, 1945. Plaintiff then returned to the accounting firm in Pittsburg with whom he was employed prior to going into the Service, but, due to his injuries, he was physically unable to resume his former position. He then accepted employment having different duties but, after some two weeks' trial, because of pain and physical discomfort, had to give up his second employment.

In the record is the testimony of orthopedic physicians given at the time of the trial who were residing or located in the Miami area, and each had either treated the plaintiff or had examined him. The extent of the plaintiff's injuries is determined by this testimony which the jury heard. The plaintiff sustained a commuted fracture of the left hip of approximately six inches which extended into the hip joint, along with minor injuries. The left hip was dislocated, thereby displacing the femur upwards some five or six centimeters and resulted in tearing the ligaments, and the cartilages were permanently destroyed, which nature never replaces. The plaintiff now has an arthritic condition of the hip which has grown progressively worse since the injury was sustained. There is no cure for arthritis known to the medical profession. The view was expressed that this arthritic condition was permanent and afterwards if it reached the point that the pain was unbearable, then a surgical operation would be necessary and the hip fused. It is unnecessary to enumerate other injuries affecting plaintiff's ultimate recovery. The extent of the injuries sustained, as we see it, under appropriate charges or instructions on the law as given by the trial court, was solely a jury question, and it has not been made to appear on this

record that the jury in reaching its verdict was in any manner influenced except by the testimony. There is ample testimony in the record to sustain the findings as expressed in the verdict and this Court is not authorized under the law to substitute its judgment for that of the jury. We find the instructions given by the court below to the jury free from error.

Affirmed.

BROWN and THOMAS, JJ., and BARNS, Circuit Judge, concur.