97 So.2d 604 (1957)
Harry GENDZIER and Sheldon Gendzier, as Co-Partners, trading and doing business as Florida Rag Company, Appellants,
v.
Adam BIELECKI and Walter Bielecki, as Co-Partners, trading and doing business as Miami Graded Paper & Rag Salvage; Appellees.
Supreme Court of Florida.
October 16, 1957.
Rehearing Denied November 13, 1957.
*605 Adams & Rothstein, Jacksonville, for appellants.
Wallace N. Maer and Edward L. Lustgarten, Miami, for appellees.
THORNAL, Justice.
Appellants Gendzier, who were plaintiffs below, seek reversal of a final judgment based on a jury verdict in favor of appellees Bielecki, defendants below, in a suit on an alleged account stated and for goods sold.
The appeal tenders for decision the correctness of the ruling of the trial judge in admitting certain evidence with reference to the intent of the appellees in signing a document and also the refusal of the trial Judge to instruct the jury on the effect of a "signature" by initials accompanied by remarks of the Judge alleged to be prejudicial.
The parties were all engaged in the rag and paper waste materials business. The Gendziers as Florida Rag Company did business in Jacksonville. The Bieleckis as Miami Graded Paper and Rag Salvage did business in Miami. In 1951 the parties entered into a formal written agreement whereby the Gendziers purchased certain merchandise, stored it in the Bieleckis' Miami warehouse and when they sold it, shared profits and losses with the Bieleckis. In addition they sold merchandise to each other. Their dealings could be described in three phases, towit: the formal contract with reference to the storage and sale of waste paper; sales by the Gendziers to the Bieleckis; and sales by the Bieleckis to the Gendziers.
In August, 1953, after a conference between Sheldon Gendzier and Adam Bielecki, a three-page handwritten document was prepared. An examination of this document reveals a tabulation of various items stored and sold and various credits given on the account. The document is headed "Amounts due to Florida Rag Co. from Miami Graded Paper and Rag Salvage Co.  Arising from losses on Stored Paper accounts." Under a section of the document designated "Summary" we find the statement "Due us as of this settlement" and a tabulation of figures totaling $6,037.83. This total figure is the result of the debits and credits in connection with the rag and waste paper contract. The document also contained a statement "Roofing not settled as yet" and "Merchandise account *606 to be handled as discussed." Each of the three pages contain the initials "AB" and "WB" and the last two pages contain the initials "SG". It is admitted that the initials SG were placed on the document by Sheldon Gendzier and the initials AB and WB were placed on the document by Adam Bielecki and Walter Bielecki, respectively.
The parties continued doing business until July, 1954, when the Gendziers rendered statements to the Bieleckis for a total of $6,885.39, representing the amount included in the document above described plus certain merchandise sold and less certain credits since the document of August, 1953. The amount of the demand not having been paid, the Gendziers sued the Bieleckis to recover the total sum alleged to be due. Their complaint was in two counts, the first alleging indebtedness "for merchandise sold by the plaintiffs to the defendants," and the second alleging indebtedness by the defendants "to the plaintiffs on accounts stated for merchandise sold." By answer the appellees denied the indebtedness and the trial resulted in a jury verdict for the defendants.
In the course of the trial, over objections by appellants' attorneys, the trial Judge permitted the appellees to testify in substance that by affixing their initials to the handwritten document they did not intend it as an agreement to account stated but on the other hand merely attached their initials for purposes of "identification." There is no claim, nor was there any testimony, that such purpose or intention was communicated to the plaintiffs or otherwise manifested in any way. The document alluded to, with the initials of the partners affixed in accordance with the undenied request of the plaintiffs, was mailed back to the plaintiffs along with a letter which stated only, "Enclosed you will find papers we are to send back."
After retiring to consider its verdict, the jury returned to the courtroom and one of the jurors questioned the Judge as follows: "This initialed document here, is that as legal as a full signed name, sir?" The Judge replied: "I am afraid, Mr. Juror, I cannot answer that question for you. You will have to apprise that document as you have and see it and from the evidence that was introduced pertaining to it." At this point plaintiffs' counsel requested the Judge to instruct the jury "that the initialing of the papers has the same effect as if they had signed their names in full, whatever that might carry along with it." In response to this request the Judge replied in the presence of the jury, "It doesn't carry any weight with me, so I will deny it." The jury then returned to the jury room and on reappearing in the courtroom returned a verdict for the defendants. Motion for new trial was denied and judgment was entered on the verdict. Reversal of this judgment is now sought.
The appellants contend that it was error to permit the appellees to testify as to their intent when they signed the document with reference to the accounts. They also contend that the Judge should have instructed the jury with reference to the effect of the initials on the document and that the comment of the Judge in the presence of the jury constituted reversible error.
The appellees contend that it was proper to permit testimony as to their intent when they initialed the document and that the comment of the Judge was intended as an observation with reference to the requested instruction rather than an inappropriate comment on the evidence.
We approach first the contention with reference to the refusal of the trial Judge to give the requested instruction and his comments in the presence of the jury at the time the instruction was requested. It is understandable that in the competitive atmosphere of a warmly contested trial, both Judge and counsel often make remarks or observations that would be less likely to occur under more deliberate conditions. *607 Many times such remarks are harmless. Florida Motor Lines Corporation v. Barry, 158 Fla. 123, 27 So.2d 753. The fact remains, however, that an inappropriate comment on the testimony or the expression of a judicial opinion on the credibility of witnesses or the value of certain evidence often leads a jury of laymen to an erroneous conclusion. 53 Am. Jur., Trial, Sec. 76, p. 75. In the instant case when the juror expressed concern over the weight to be given the initials as contrasted to a full signature, he should have been advised that a set of initials is just as effective to bind a party to an agreement as would be a full signature. 17 C.J.S. Contracts § 62(b), p. 412. In other words there is no material difference whether a party to a contract executes it by affixing his initials or his complete signature. If either is an act of the party in authentication of the document it is equally binding upon him.
The juror in this case was instructed to the effect that the court could not answer the question and that he would have to evaluate the document in the light of the evidence introduced pertaining to it. This response, of course, involves the other point presented by the appeal with reference to the allowing of testimony with reference to the intent of the appellees when they initialed the document. After the juror made his inquiry, plaintiffs' counsel requested an instruction to the effect that the initials would be just as effective as a full signature. In response to this request the Judge gave the reply, "It doesn't carry any weight with me, so I will deny it." The appellees contend that the Judge in making this remark had reference to the requested instruction rather than to the documentary evidence signed by the use of initials.
The fact that the lawyers themselves are at odds as to just what the Judge was commenting on adds further weight to appellants' contention that to say the least it would be confusing and misleading to a jury. In the mind of the average juror the trial Judge is the arbiter and "final word" on any matter upon which he expresses an opinion. This is as it should be. In this state we are blessed with many exceedingly able trial judges of whom the one in the instant case certainly ranks high. Nevertheless, it appears to us that the appellants were entitled to have the requested instruction given and further that the judicial observation was such that the jury might have drawn an incorrect inference adverse to appellants' case. Griffith v. Shamrock Village, Inc., Fla. 1957, 94 So.2d 854.
In Griffith v. Shamrock Village, Inc., supra, we stated that when error is made to appear, injury is presumed to follow, and that injury is not difficult to presume in a case in which a party's evidence is not disputed yet the jury renders a verdict against him. This is illustrated in the instant case in that the plaintiffs' claim included, under the count for goods sold, an item for roofing material left on contract in the sum of $1,400.99. Upon his examination, defendant Adam Bielecki admitted that that amount of money was owing to the plaintiffs on that account, yet the jury's not guilty verdict apparently omitted entirely any consideration of this item.
The advice which the Court did give to the juror, which was in effect that he would have to evaluate the document as he viewed it from the evidence introduced, brings us to the other point with reference to allowing testimony regarding the intent of the appellees when they initialed the so-called account statement. It will be recalled that they admitted affixing their initials to the document but were permitted to testify that when they did so they did not intend to agree to the statement of account but rather affixed their initials merely for purposes of identification. It is not clear from the record exactly what they were attempting to identify if they had no intent to approve the words and figures in the document.
*608 We do not overlook the rule that one claiming under a stated account is not entitled to the benefit of an absolute estoppel. An account stated is prima facie evidence of the correctness of the items and the liability of a party therefor. This presumed correctness may be overcome by proof of fraud, mistake or error. However, the burden of establishing fraud, mistake or error is upon the party asserting it and unless he disposes of this burden, the presumptive correctness of the stated account becomes conclusive. Martyn v. Amold, 36 Fla. 446, 18 So. 791; Brite v. Orange Belt Securities Co., 133 Fla. 266, 182 So. 892; City of St. Petersburg v. Meyers, 5 Cir., 55 F.2d 810. In the instant case no effort was made to establish fraud, mistake or error. The appellees merely undertook to prove a personal unilateral intent with reference to their own motive in signing the document. The rule is well established in this state as well as everywhere else that when competent parties reduce their engagements to writing in terms that create a legal obligation without any uncertainty as to the object or extent of the engagement as between them, it is conclusively presumed that the whole engagement and the extent and manner of their undertaking is contained in the writing. The writing itself is the evidence of what they meant or intended by signing it. The test of the meaning and intention of the parties is the content of the written document. Ross v. Savage, 66 Fla. 106, 63 So. 148.
It should be remembered that we are here dealing with an effort by one party to a writing to testify as to his own personal mental attitude with regard to the writing rather than an effort to show the mutual intent of the parties by surrounding facts and circumstances. Likewise, we are not here confronted with an assault on the validity of one's assent to the terms of the agreement because of fraud, accident or mistake. The appellees concede that they signed the instrument and attempt merely to support their position by testifying as to their uncommunicated intention. They do not contend that the instrument on its face is ambiguous, contradictory or impossible of interpretation without supplementary extrinsic evidence.
Some courts have stated the rule to be that in determining whether there has been a mutual consent to a contract, the courts will not explore the "subjective intent" of the parties but only their "objective intent"; that is, the courts will undertake only to determine what a reasonable man would believe from the outward manifestations of the consent of the parties as evidenced by the language of the written document. Leo F. Piazza Paving Co. v. Bebek & Brkich, 141 Cal. App.2d 226, 296 P.2d 368. We think it unnecessary to burden this opinion with a theoretical discussion of the distinctions between objective and subjective intent in the problem of interpreting a contract which the parties themselves have expressed in writing. The rule is probably best expressed by the late Justice Holmes in "The Path of the Law," 10 Harvard Law Review 457, where it was stated in part that "The making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs  not on the parties having meant the same thing but on their having said the same thing." See also Industrial Products Mfg. Co. v. Jewett Lumber Co., 8 Cir., 185 F.2d 866; Ray v. William G. Eurice & Bros., 201 Md. 115, 93 A.2d 272; and 12 Am.Jur., Contracts, Sec. 19, p. 516; 17 C.J.S. Contracts §§ 32, 33, pp. 361, 362; Wigmore on Evidence (3d Ed.) Vol. IX, Secs. 2413, 2414.
So far as the record reveals there was no contention on the part of the appellees that there were any extraneous facts or circumstances that prevented a meeting of the minds or that would adversely affect the validity of their signatures to the document. The sum of their position simply is that they examined the document thoroughly, signed it with their initials, returned it by mail to the appellants but reserved to themselves the private "intention" *609 that it was not for the purpose of agreeing to the stated account but for some other less binding purpose. On this particular point it appears to us that the document should be permitted to "speak for itself" and the evidence as to the secret unilateral intention of any of the parties would be inadmissible.
Appellants objected to the testimony on the ground that it violated the parol evidence rule. Actually this is not the rule that precludes this type of evidence. More accurately the objection is that evidence of the unilateral secret intent of a party to a written instrument is in and of itself immaterial to the actual creation of a contract. Hobbs v. Massasoit Whip Co., 158 Mass. 194, 33 N.E. 495; Restatement of the Law of Contracts, Sec. 20. We have elaborated on this proposition to some extent, however, for the guidance of the parties at another trial of the cause.
For the reasons stated the judgment is reversed and the cause is remanded for further proceedings consistent herewith.
Reversed and remanded.
TERRELL, C.J., and ROBERTS, DREW and O'CONNELL, JJ., concur.