PIERCE, Judge.
In this case appellants Judy C. Thompson and W. A. Thompson, Sr., plaintiffs in the Court below, appeal a final judgment in favor of appellees Albert F. Martin and Robert R. Langford, defendants below, in a suit brought to recover for personal injuries and car damage as a result of a vehicular collision.
Only two points are urged here by plaintiffs as grounds for reversal: (1) denial of motion for new trial and judgment n.o.v. after an adverse verdict, and (2) propriety of the general conduct of the presiding Judge during trial of the case.
On September 17, 1964, Judy C. Thompson was driving a car, owned by her father, W. A. Thompson, Sr., in a southerly direction on Nebraska Avenue in Tampa. She was forced to stop in a line of cars for an automobile at the head of the line to make a left turn, and while so waiting her car was struck from the rear by a grocery truck, which in turn had been struck from the rear by a semi-tractor trailer owned by defendant Martin, but being driven with permission by defendant Lang-ford.
Judy was injured by the impact, and suit was thereafter filed in the Hillsborough County Circuit Court by Judy and her father against the owner of the trailer Martin and its driver Langford. Issues customary in such cases were made up, and in due course the case came to trial before a jury, Hon. James D. Bruton, Jr., Circuit Judge, presiding. Verdict of not guilty for the defendants was returned, motion for new trial was filed and denied, and final judgment for defendants was entered accordingly.
Defendants jointly appeal to this Court from said final judgment and assign some twenty-five alleged errors, the main thrust of which is that (1) the evidence at the trial was such as to require a verdict for plaintiffs, and (2) the trial Judge injected himself into the trial proceedings in such an excessive and prejudicial manner as to deprive plaintiffs of a fair trial. We are constrained to hold that error to a reversal has not been sufficiently demonstrated, and therefore affirm.
The question raised here on the matter of .the evidence concerns the element of liability, and specifically, the condition of the brakes on the semi-tractor trailer. There was evidence that the brakes needed adjustment at the time of the accident, also that the driver Langford prior thereto knew that the air hoses on the braking system were “worn”, and had so informed the owner Martin. But there was also testimony to the contrary, that the driver had never made such statement and no such information had been so imparted to the owner. The owner testified that to his knowledge the tractor trailer was in good condition before the accident, that the brakes had been relined and the air hoses replaced about six months before, and that so far as he knew the truck had been performing satisfactorily. The driver, who was an experienced truck operator, testified he had driven this particular truck since the owner had bought it, that it was in good condition to the best of his knowledge that, while there had been some “grabbing” of one wheel before the others when brakes were applied, the ability to stop the truck was not thereby impaired, that about six weeks before the accident the truck had passed an ICC inspection test, that new air hoses had been recently installed, and that the brakes had been completely relined about five months before the accident. Immediately prior to the impact, Langford had applied the brakes on the truck, they held briefly, then gave way, whereupon in trying to avoid the accident he swerved to the right, leaving the road in a vain effort to avoid the accident, in the process of which the truck overturned and Langford was hurt.
*69 The foregoing makes a typical fact.question which the jury was to decide, namely, the condition of the brakes on the truck and whether the defendants, or either of them, knew of any deficiency. Such factual question was in effect what the jury was impanelled and sworn to determine. And such determination was evidenced by the verdict duly returned. The trial Judge, who personally heard all the evidence and observed all the witnesses, declined to interfere with the verdict. We are in much less position so to do. Reversible error has not been demonstrated on this point.
On the matter of the conduct of the trial, this presents a matter more serious than the first point, but one that is soluble without difficulty.
Plaintiffs contend that the trial Judge intruded himself into the trial proceedings to an excessive degree; that he unduly questioned witnesses himself; that he commented on the evidence on occasions, at least obliquely; that he suggested objections to defense counsel to certain questions; and that on other occasions he refused to permit answers to questions propounded by plaintiffs’ attorney to his own witness where defense counsel had not obj ected.
Plaintiffs devote twelve pages in their brief to their contentions in this regard. We have also read and carefully considered the entire record of the trial proceeding. While the presiding Judge could have been somewhat less voluble and somewhat less gratuitous in his participation in the trial proceeding, and have generally conducted the trial in a somewhat more dignified equilibrium, we cannot Say we would be justified or warranted in reversing the judgment solely because of the way the trial was conducted. In our opinion, several of the Judge’s remarks were perhaps technically improper, and some of his in-terpositions into the proceedings questionable, even to the point of technical error, but this is a long way from saying it amounted to reversible error.
In jury trials, the trial Judge should be cautious in his language and conduct before the jury, and he must be fair to both sides, and the extent to which he may go and comment during the trial is governed by the fundamental principle that nothing should be said or done by him which would prejudice the rights of the parties litigant. Florida Motor Lines Corp. v. Barry, 1946, 158 Fla. 123, 27 So.2d 753. He should at all times maintain an impartial attitude and, even if exposed to great provocation, he is not justified in accusing a party’s lawyer of unfairness, even by the sheerest inference, or in holding him up to contempt in any way before the jury. Skelton v. Beall, Fla.App.1961, 133 So.2d 477, 94 A.L.R.2d 820.
A clear exposition of the law in this respect was given by Judge Sturgis of the 1st District Court in Crews v. Warren, Fla.App.1963, 157 So.2d 553, as follows: *70 spired; that his was the delicate and important responsibility of reducing the extremes of the tensions and voids of the drama to as temperate a norm as the circumstances would permit. To that end a trial judge must be and he is vested with the duty and broad power to do those things reasonably necessary to insure the integrity of the trial over which he presides. In pursuit of this objective he may elicit from the witnesses such testimony as he may reasonably deem proper in order to acquaint the jury with such facts as are calculated to aid in resolving the issues, and to make such inquiry as may lead to the truth or a better understanding of it. Generally, it is his duty to so control the orderly processes and progress of the cause over which, he presides that justice under the law may prevail.
*69 “As has often been said, an appellate court cannot recreate the stage or settings of the drama enacted before the trial judge. It deals with the cold record, and in so doing accords to the trial judge’s actions a full and complete attitude of fairness and impartiality, upon which rests the very foundation of our system of jurisprudence and the concept of justice under the law. When confronted with excerpts from that cold record, as in the case on review, for the purpose of demonstrating error on the ground that the trial judge unduly participated in certain phases of the trial— that his acts were not impartial and therefore prejudicial — the acts complained of must be viewed in the light of the entire record and with due awareness of the fact that he was in a peculiarly advantageous position to observe the nuances and implications of all that tran-
*70 One who challenges a judgment or decree on the ground that acts of the trial judge prejudiced a fair and ' impartial trial assumes the heavy burden not only of showing the commission of an act that is inherently or under the peculiar circumstances of the case clearly of a nature prejudicial to his rights, but also of demonstrating that the act complained of produced a prejudicial effect.”
It would serve no useful purpose to go into detail or even to comment upon the several incidents complained about by plaintiffs' during the trial proceedings. Suffice to say that, even collectively, it could not be reasonably said that, if they had not occurred, a different verdict would have been returned.
The judgment is therefore
Affirmed.
LILES, C. J., and MANN, J., concur.