**In re TUTTLE/WHITE CONSTRUCTORS, INC., Debtor.**

**FEDERAL INSURANCE COMPANY, Plaintiff,**

**v.**

**Jules S. COHEN, Trustee, Defendant.**

**Bankruptcy No. 81–463–Orl–BK–GP. Adv. No. 81–407.**

United States Bankruptcy Court, M. D. Florida, Orlando Division.

June 2, 1982.

Norman L. Hull, David M. Landis, Orlando, Fla., for plaintiff.

Lionel H. Silberman, Orlando, Fla., for trustee.

Jules S. Cohen, Orlando, Fla., trustee.

### MEMORANDUM DECISION

GEORGE L. PROCTOR, Bankruptcy Judge.

The debtor, Tuttle/White Constructors, Inc. ("Tuttle/White") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on May 29, 1981. Jules S. Cohen (the

"Trustee"), the defendant herein, was appointed Trustee by this Court shortly thereafter. The plaintiff, Federal Insurance Company ("Federal") was and is the surety for Tuttle/White on most of the debtor's uncompleted construction projects. Federal was apprised of the debtor's impending petition approximately two days prior to the filing of the petition and moved rapidly to review the debtor's records to determine the status of the bonded projects.

Federal's attorneys met with the Trustee in an attempt to convince the Trustee that he should reject two of the most critical Tuttle/White projects, *viz.*, the Marriott at Hilton Head, South Carolina, and the Holiday Inn Surfside at Clearwater, Florida. Federal's most urgent concern with respect to these two projects was to be able to deal with them as a completing surety, without being under any danger that the Trustee might exercise his option under 11 U.S.C. § 365(d)(1) to assume the debtor's contracts and to interfere with the surety's discharge of its obligations. The Trustee offered to release to Federal those two projects for either $78,000.00 or $90,000.00, an offer which was rejected by Federal. Federal thereupon filed an adversary action seeking to compel the Trustee to choose between assumption and rejection as to those two projects and an additional project, *viz.*, Marbella Club Condominiums at Marco Island, Florida.

During the week which followed the initial contact between the Trustee and Federal, the parties met two or three more times. The scope of these subsequent meetings, however, was much wider than the two projects initially discussed. The testimony of each witness is uniform in that Federal's expressed objective was to reach an agreement whereby the Trustee would, for a single consideration, relinquish *all* his rights in twenty-two (22) specific projects and would thereby cease to constitute a threat present or potential to Federal's financial interest in these projects. In their negotiations, Federal made available to the Trustee and explained to him its assessments of the status of each of the projects, including the amounts Tuttle/White owed to the subcon-

tractors and suppliers on each of the projects and the amount left to complete on each, and the ultimate surplus or loss to Federal on each. The Trustee was given access to Federal's construction consultant, Roy Adams, and in fact had a separate conference with him wherein Mr. Adams explained the factors that comprised Federal's projections. The Trustee was provided with a project status summary and extensive back up documentation for each of the twenty-two (22) projects.

The Trustee finally proposed to enter into an agreement whereby Federal would pay to the estate the sum of $260,000.00. What the Trustee was to convey to Federal or forbear from doing in consideration for the $260,000.00 occupies the center of the controversy between the parties. An agreement was entered into ("the Agreement") and objections to the compromise (largely based on the mistaken impression that the Agreement absolved Federal of its obligations to third parties on its bonds) were overruled. The Trustee received the $260,000.00 and the adversary proceeding was dismissed. Shortly thereafter the Trustee began filing adversary proceedings to set aside allegedly preferential transfers under 11 U.S.C. § 547(b). To date the Trustee has filed in excess of twenty (20) such proceedings, and intends to file some seventy-seven (77) more. The great majority of these preference actions seek to recover payments from subcontractors or suppliers to Tuttle/White on the twenty-two (22) projects comprehended by the Agreement. There is no dispute that recovery by the Trustee of preferences from such subcontractors and suppliers would have the effect of increasing Federal's exposure on its surety bonds, since the preference actions are directed against payments by Tuttle/White to suppliers and subcontractors which the surety had counted on as having been paid (and remaining paid) at the time of the disclosure to the Trustee of the status of the projects and the making of the Agreement. There is no question that the actions by the Trustee, if any are successful, will increase the payables and the cost to com-

plete of one or more of the twenty-two (22) projects; additionally, Federal will be required to defend suits on the bonds brought by the subcontractors and suppliers against whom preference actions are brought. In fact, in most of the preference actions begun to this date by the Trustee, the preference defendants have filed third party actions against Federal seeking recovery on Federal's surety bonds. Federal has testified, through one of its attorneys, Mr. Jesse Williams, that the preference actions filed by the Trustee have additionally damaged Federal in that several of the subcontractors against which preference actions have been filed have slowed down and have not been zealous in the prosecution of the work and that this conduct is directly linked to the Trustee's filing of preference actions.

The resolution of this matter depends upon an analysis of the Agreement and of the circumstances surrounding its execution. The Agreement, in consideration of the payment to the Trustee of $260,000.00 contained the following provisions for performance by the Trustee:

2. The Trustee will convey and assign to Federal *all the right, title, and interest of the debtor's estate and of the Trustee* in the following manner:

a. *The executory contracts* for Tuttle/White's projects listed in Schedule A attached hereto and incorporated herein by reference;

b. Any contract balances (including earned and unearned balances and retainages for those contracts listed in Schedule A;

c. Any materials stored or located upon the projects listed in Schedule A;

d. All job records on projects listed in Schedule A of every kind and description, including file cabinets, plans, blueprints and diagrams located at the project sites or at Tuttle/White's main office in Altamonte Springs, Florida, or wherever they may be found;

e. *Any claims of Tuttle/White which may arise from or concerning any of the projects listed in Schedule A.*

3. Federal makes no claim on the operating equipment of Tuttle/White.

4. None of the foregoing is intended to preclude, diminish, or adversely affect any claim Federal may submit as a creditor.

5. The Trustee will file a report and notice of this compromise with the Bankruptcy Court. Upon no objection or request for hearing being filed within ten (10) days after receipt of the notice by parties in interest or upon the overruling of such an objection by the Bankruptcy Court, the Trustee and Federal will stipulate to a dismissal, with prejudice of the aforesaid adversary proceeding between Federal and the Trustee. (emphasis supplied)

The evidence supports and this Court finds that the Agreement was intended by Federal to foreclose the Trustee from any further interference of any kind in the twenty-two (22) projects covered by the Agreement. The Trustee was well aware of Federal's interpretation of the Agreement, and testified that he (the Trustee) was not intending to give up preferences by this Agreement. Neither Federal nor the Trustee openly discussed preferences. The Trustee probably knew that if he brought up the subject of preferences, Federal would not have entered into the Agreement nor paid the estate $260,000.00. The Trustee freely admits that he intentionally kept silent so that he "could achieve a certain result," *i.e.*, the obtaining of the $260,-000.00.

The Trustee's rationale for the assertion of his power under 11 U.S.C. § 547(b) to avoid preferences is that preferences are not specifically conveyed in the Agreement, nor can he as Trustee assign his power to avoid preferences to third parties. Federal concedes that the Trustee cannot assign the right to avoid preferences as such to third parties, but asserts that the Trustee can and did compromise his right by entering into the Agreement. Federal's argument is essentially that the Trustee impliedly agreed to forbear from the exercise of his avoiding powers.

118

The Court is of the opinion that the Agreement taken in the totality of the circumstances in which it was reached, precludes the Trustee from maintaining preference actions to Federal's detriment. The Trustee was careful enough to preserve in the written language of the Agreement his claim to the operating equipment of Tuttle/White; good faith dealing would require him to at least bring up or demand exclusion for any category of claim that was intended to fall outside the broad language of the Agreement, including preference claims. The Trustee cannot rely on his silently held intention to preserve his preference action rights, as the objective manifestation of all parties was that the Agreement was to end *all* involvement of the Trustee in the twenty-two (22) projects covered by the Agreement. The Trustee, by his conduct and silence must be held to have assented to Federal's expressed understanding of the Agreement. *Davis v. Evans*, 132 So.2d 476 (1st DCA Fla. 1961); *see also Gendzier v. Bielecki*, 97 So.2d 604 (Fla. 1957). The same silence must also preclude the Trustee from making a successful argument based on the lack of adequate consideration, as he should have openly specified what the consideration was for in the Agreement if his understanding differed from that of Federal. The Court concludes that the Trustee could and did impliedly agree to compromise his potential claims for preferences in making the Agreement with Federal, *see* 11 U.S.C. § 323(a); 2 *Collier on Bankruptcy* (15th Ed.) ¶ 323.01; and *Florida Trailer and Equipment Company v. Deal*, 284 F.2d 567 (5th Cir. 1960). Accordingly, the Trustee is now estopped from contending otherwise. *Camp v. Moseley*, 2 Fla. 171 (1848); *Davis v. Evans, supra.* Federal is entitled to the entry of an appropriate injunction to effectuate the Agreement and to insure specific performance therewith.

Final Judgment will be entered separately for the plaintiff.