PER CURIAM.
The parties, by appeal and cross-appeal, seek to overturn a final judgment entered after a non-jury trial. The judgment contains the following findings of fact:
“1. Far West is a Florida corporation engaged in the business of growing tropical plants in Central America for resale in the United States and Europe. Mr. Raams was formerly a resident of the Netherlands but now resides in Dade County, Florida. Mr. Raams formed and owns Far West ‘Europe’ which is now known as Raams Botanicals, B.Y.
“2. In 1976, Mr. Raams became an employee of Far West and continued as an employee of Far West until April, 1979. Far West complied with the terms of the employment agreement with Mr. Raams and during the entire course of his employment, and for sometime thereafter paid him an agreed weekly paycheck of either $500.00 or $1,000.00 and other employee benefits such as group insurance. Mr. Raams had been employed as the sales manager for Far West in Europe and prior to his termination he had continued to act as sales manager for Far West and had utilized Far West ‘Europe’ as a sales agent for the products of Far West and had collected accounts for and on behalf of Far West.
“3. During the course of his employment, Mr. Raams had control of all of the books and records and the accounts receivable and accounts payable of Far West pertaining to the sales of tropical plants by Far West in Europe. In terminating and winding up their affairs, Mr. Ritter of Far West met with Mr. Raams and his accountant to go over all of the accounts and thereafter Mr. Ritter and Mr. Raams met with an attorney in Holland who prepared a written agreement which was thereafter executed by all parties including Mr. Raams on his own behalf and on behalf of Far West ‘Europe’. “4. The signed agreement was predicated upon a schedule of accounts which had been prepared by Mr. Raams’ accountant. The schedule of accounts reflected that there was approximately Dfl. 1.266.700 ($633,350 U.S.) collected or to be collected by Mr. Raams and Far West ‘Europe’ and paid over to Far West. In the agreement, Mr. Raams and Far West ‘Europe’ acknowledged ‘for the sake of good order’ that as of March 27, 1979, Far West ‘Europe’ was indebted to Far West in ‘an amount of about Dfl. 1.000.00’ ($500,000 U.S.). The parties also acknowledged that Far West ‘Europe’ was to pay an indebtedness to other suppliers which again ‘for the sake of good order’ was ‘an amount of about Dfl. 38.000’ ($19,000 U.S.)[1]
*900 “5. After executing the agreement, Mr. Raams and Far West ‘Europe’ continued to collect the accounts receivable and in addition collected other invoices for sales of Far West products after March 31, 1979, and collected other monies which was [sic] to have been remitted to Far West. Total collections by Mr. Raams and Far West ‘Europe’ exceed Dfl. 900.-000 ($450,000 U.S.). In addition, Mr. Raams and Far West ‘Europe’ forgave the collection of other accounts so that the account debtors could credit monies to Mr. Raams and Far West ‘Europe’. Mr. Raams and Far West ‘Europe’ did not collect all of the accounts reflected on the schedule of accounts and certain accounts remain unpaid.
“6. Of the monies collected by Mr. Raams and Far West ‘Europe’, they only paid over to Far West a sum slightly in excess of Dfl. 3000,000 [sic] ($150,000 U.S.). From time-to-time, Far West called upon Mr. Raams to pay over the sums of money which he did not do and thereafter Far West commenced collecting certain of the accounts directly and also paid creditors who claimed against Far West.
“7. After taking into consideration the collections made by Mr. Raams, the credits he issued, the collections made by Far West and the sums of money paid to creditors of Far West, there remains due and owing to Far West from Mr. Raams and Far West ‘Europe’ the sum of $115,-600.00.”
The appellant points out that if, as the trial court ostensibly found, Raams collected in excess of $450,000 to be remitted to the appellant, and only paid over slightly in excess of $150,000, then the appellant should be entitled to a judgment for the difference, since the credits issued by Raams to account debtors were for the benefit of Raams, not Far West Botanicals, Inc., and the collections made by the appellant were distinct from and over and above moneys collected by Raams already due the appellant. On the other hand, the appellees argue that quite apart from this internal inconsistency, the predicate finding of the trial court respecting collections made by Raams does not in the first instance reflect a net amount due the appellant which is supported by the evidence, and that the figures found by the trial court in the record and in the final judgment bear no resemblance to accounting information and documents and other evidence before the court.
Two things are certain. The final judgment is incorrect; and it is not possible on the record before us to determine how the trial court arrived at the amount said to be due. The matter is even more confounded by the trial court’s subsequent order amending the final judgment, which in pertinent part reads:
“a. Taking the evidence in the light most favorable to the Defendant and using the figures supplied by the Defendant which have any credibility it is clear that the Defendant collected 876,648.70 Dfl of accounts receivable belonging to the Plaintiff; and either wire transferred, paid expenses, made property transfers or paid to suppliers the sum of 670,021.29 Dfl. There is no credible evidence that Defendant has any further set-offs to the amount collected. This leaves a deficit due Plaintiff of 206,627.45 Dfl or $103,-313.70.
“b. This Court’s Judgment of February 9, 1981, is hereby amended so that in place of the figure $115,600.00 wherever it appears in said Judgment there shall be inserted the figure $103,338.86.”
The figures contained in this order are nowhere to be found in the record, conflict with figures elsewhere “found,” and, finally, are arrived at by “taking the evidence in the light most favorable to [Raams],” which, we need hardly say, is not the appropriate standard for viewing evidence in the context of fact-finding.
We cannot simplistically conclude, as appellant would have us do, that the trial court merely credited instead of debited *901 Raams with certain ascertainable amounts, and we need only reverse the credits to solve the problem. If, indeed, this was the error of the trial court, it may upon our remand correct the judgment. But if, as we believe the case to be, and as the trial court apparently believed,[2] the complex financial transactions between the parties require a more complete development with the aid of an an accountant, then the trial court should order that that be done and receive such further evidence as is necessary, or order the case retried from the outset.
Reversed and remanded.

. The appellant contends this agreement was an account stated. The trial court did not find one to exist, and the agreement lacks the required certainty (e.g., “for the sake of good order”) as to the object or extent of the obligation so as to make an account stated. See Gendzier v. Bielecki, 97 So.2d 604 (Fla.1957). More importantly, even if Raams acknowledged owing about $500,000 at that time, the issue here is how much of that was paid there *900 after in one form or another to Far West Botan-icals, Inc.

. At the close of the evidence, the trial court stated:
“THE COURT: I should have followed my instincts, gentlemen. My instincts said that this matter should have been tried before a certified public accountant so he could take an accounting because that is all this Court really ordered to be done, have an accounting taken, an accounting between these parties and the business transactions between them as to who may owe money to whom. I could have set out the guidelines for that accounting had anybody wanted me to do that and the guidelines would have been strictly the business transactions between the parties.”